## STUBER v. LOUISVILLE & N. R. CO.

### (Circuit Court, W. D. Tennessee. May 15, 1900.)

RAILROADS—NEGLIGENCE—INJURY TO EMPLOYE—FELLOW SERVANTS.

Plaintiff, who was a skilled machinist, and employed by defendant to keep its pumps, tanks, wells, etc., in good working order, while riding on one of defendant's engines to reach a point where his duties called him, was injured by the engineer's negligently running the engine into a freight train. *Held*, that plaintiff and the engineer were not fellow servants in such sense as to prevent recovery by plaintiff for the damages sustained.

## At Law.

Action for personal injuries by collision of an engine with a freight train. The plaintiff was riding in the cab of the engine, and, being thrown violently upon his head, was seriously and permanently injured. The negligence of the engineer was not contested, but admitted, by the defendant company, which discharged him because of this occurrence. The plaintiff, in his testimony, described himself as the "supervisor of the water supply," but on cross-examination and otherwise it turned out that he was not quite entitled to that rank in the service. By a new arrangement his wages had been cut, along with others, to make another the "supervisor," possibly of the whole system, while he continued to do the same work as before on the Memphis branch of the system, though his precise status was not brought out very clearly by the proof, and perhaps it is not very important. What does clearly appear is that the plaintiff was a skilled machinist in the branch of mechanics pertaining to water pumps and their appliances. For a long time he had been in the faithful service of the company, until he had been put in charge of all the water stations between Bowling Green and Memphis. It was his duty to keep the pumps, tanks, wells, etc., in good working order. By his own labor, or with the assistance of others when necessary, he made all repairs, changes, and betterments whenever and wherever needed. Constantly traveling in this service of inspection and repairs, he carried "a pass," and orders admitting him to all trains, often riding on "wild engines," hand cars, or however else was most convenient. He was paid $80 per month for this service. On this occasion an engine was going, in charge of one Hummel, from Paris down the road, to bring up a train. The plaintiff, having occasion to go down the road below where the engine would stop, but hoping to catch a train at that point, took passage on this engine, being admitted on his orders or "pass," with his kit of tools. On the way, through the grossest carelessness of the engineer, the engine ran almost at full speed into the rear end of a lumber train being shunted in one of the yards at a station. The plaintiff does not remember whether he jumped voluntarily or was thrown off by the concussion, but when found he was unconscious, and has since been, admittedly, in a condition of mental and physical weakness quite hopeless in its character, caused by some injury to the brain or its tissues. The fact of serious injury was apparent, though the plaintiff managed, by great effort, to overcome the nervous agitation of his physical and mental distress, and give a sensible account of the occurrences. The defendant company made no defense except that of fellow service, suggesting, however, contributory negligence in being on an engine contrary to the company's rules forbidding any one to ride on the engines. This suggested defense the court overruled on the ground that the orders or pass the plaintiff had abrogated the rule as to him. There was no proof offered by the company to contradict the plaintiff's statement that his orders or pass required that he should be received on any "train," and the nature of his service made this reasonable. He testified that for many years he was in the habit of riding on engines or anywhere most convenient or necessary to get him along. Another rule of the company defined the word "train" as including an engine running alone as this was, and his orders had always been so construed in the service. The court overruled the defendant's motion to direct a verdict on the ground of fellow service, and, submitting only the question of damages, the jury returned a verdict of $6,000 for the plaintiff.

Thomasson & Williams, for plaintiff.
Sweeney & Farrabaugh, for defendant.

HAMMOND, J. (after stating the facts as above). In denying the defendant's motion it is possible the court is misconstruing the effect of the case of Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, Adv. S. U. S. 85, 44 L. Ed. ——, the latest exposition of the law of fellow service by the supreme court of the United States. Because that court has overruled the Ross Case (112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787) it does not follow that it has established the broad contention of the learned counsel for the defendant company that the exemption from liability for the negligence of fellow servants covers all employés from the president down, except where the company has failed to furnish—First, a reasonably safe place; or, secondly, adequate appliances; or, thirdly, to make diligent inquiry as to the competency of co-servants.

The court does quote cases that enunciate this extreme doctrine, apparently, but it is one of the features of the case that the learned justice delivering the opinion of the court is most careful to confine its effect to the precise facts involved, and declines to educe a rule applicable to all possible circumstances,—such as the rule insisted on by the defendant's counsel here. Each case depends on its own circumstances. And this must be so, for, as Judge McKinney says in Washburn v. Railroad Co., 3 Head, 638, 642:

"If this be correct,—that the board of directors only is to be regarded as the principal or master,—it will inevitably follow that the company cannot be held liable, in a case like the present, unless it can be shown that the injury resulted from the direct action of the company in its corporate capacity. This is absurd. The corporation, of necessity, acts through the instrumentality of its officers and agents. If not prohibited by the charter, it may delegate its authority to its officers and agents, so far as it may be necessary to effect the purposes of its creation. It must act in this mode, or not act at all."

In a very wide sense all engaged in the operation of a railroad, from the president to the axle greaser, are fellow servants, to be sure; but this is not what the cases mean by that expression. In this case the company had delegated to some proper official the authority to contract with this plaintiff that he should inspect and properly care for all the appliances for water supply at the water stations from Bowling Green to Memphis, and to contract with him for his safe transportation from one place to another for the performance of that service, for which he was supplied with the necessary passes and orders to receive him on any train; and by means of these orders he was admitted to the engine on which he was injured by collision through the negligence of its driver. He had not the least connection with the movement of that engine, or of any train on which he might be traveling. It was, indeed, not going all the way to the point he wished to reach. He was not charged with any duty even remotely connected with its movements imposing on him any care to guard himself against the negligent management of the engine, jointly or otherwise; nor of that character which would imply, necessarily, that the dangers of the engineer's negligence were assumed by

him. The suggestion that he performed a like service to that of the fireman when shoveling coal or receiving it on the tender is a very strained one. He did not attend the water tank or deliver water to the engine, but only kept the pumps in repair. Not any more than a machinist engaged in repairing car wheels or locomotive machinery was he jointly employed in the business of running the trains or engines on which he took his passage. It was the duty of the company to transport him, and the engineer was its agent in doing that work for him. Mr. Justice Brown, in Railroad Co. v. Hambly, 154 U. S. 349, 357, 14 Sup. Ct. 984, 38 L. Ed. 1012, says this:

"If the departments of the two servants are so far separated from each other that the possibility of coming in contact, and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the person injured, the doctrine of fellow service should not apply. In this view it is not difficult to reconcile the numerous cases which hold that the persons whose duty it is to keep railroad cars in good order and repair are not engaged in a common employment with those who run or operate them."

And he pronounces this the most satisfactory test. He cites, by way of illustration of what is meant by the test he is applying, the case of Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755. If the case we have in hand were reversed in its facts somewhat, so that the engineer had been injured by some negligence of the plaintiff, Stuber, in making repairs of a pump, let us say, it is conclusively established by this last-cited case and its approval by Mr. Justice Brown's opinion and reasoning on the subject that the doctrine of their fellow service would be no defense. Why, then, should it be now, when the injury is the other way? for there is mutuality of risk in the doctrine. Again, let us suppose that the plaintiff's contract had been to do the work of keeping the water appliances in repair for a compensatory sum that would contemplate the payment by him of his travel fares; would it then be claimed that he was a fellow servant with the engineer? In effect, he does the work for $80 per month plus travel fares, since they give him free transportation. Or, suppose he should be traveling in his own conveyance, or otherwise independently, while on duty in the company's service, and were injured by the engineer; would they then be fellow servants? Only in the widest sense that would, by the universality of the application, be a reduction to that absurdity mentioned by Mr. Justice McKinney in the case above quoted.

Overrule the motion.