[No. 3615.   Decided December 27, 1900.]

23  615
d37  116

PAUL PETERSON, *Respondent*, v. SEATTLE TRACTION COMPANY, *Appellant*.

MASTER AND SERVANT—INJURY TO EMPLOYEE AFTER CLOSE OF WORK—LIABILITY OF MASTER.

Where one is employed as a day laborer to lay track for a street railway company under a contract at so much per day and his transportation to and from his place of labor, at the cessation of his day's work, he is no longer in the employ or under the control of his employer, and if he is injured while returning home on the company's car at the close of his day's work, by reason of the negligence of any of the company's employees, the company is liable therefor, as the doctrine of the exemption of liability of a master to a servant for the acts of a fellow servant is inapplicable in his case, since at the time of the injury he was not acting in the service of his master.

STREET RAILROADS—COLLISION—NEGLIGENCE.

Where two cars meet in a head-end collision, on a single-track railway, it is negligence, which, in the absence of other showing, must be assumed as caused by the company's employees in charge of the cars, who allowed them to come into collision, and hence imputable to their employer.

PLEADING—DEMURRER—IMPERTINENT ANSWER.

When the plaintiff has set up a contract in his complaint which has been answered by a general denial, it is competent for the defendant to put in evidence any material matter to defeat the alleged contract, and it may show a different con-

tract; hence an affirmative defense setting up a different version of a contract than that alleged in the complaint cannot be construed as adding more than a general denial already made, and hence is properly demurrable.

CONTRACT FOR TRANSPORTATION—LIMITATION OF CARRIER'S LIABILITY—WHEN ADMISSIBLE IN EVIDENCE.

In an action by one injured while traveling upon an employee's ticket to recover damages on account of defendant's negligence, where it is an issue as to whether the contract for transportation was an unconditional one between the parties, a condition on the back of the ticket book, signed by the plaintiff, whereby he agreed to assume all risk for any injury or loss to him while using it, is admissible in evidence as a circumstance tending to show that his contract for transportation was a conditional one.

SAME—PUBLIC POLICY.

A contract agreeing to exonerate a carrier from responsibility for loss or injury received while riding on a free pass as an employee of the carrier is not void as against public policy.

EVIDENCE—OPINIONS AS TO PHYSICAL CONDITION.

In an action for personal injuries the testimony of those acquainted with plaintiff, as to his physical condition before and after the accident, is admissible.

DAMAGES—EARNING CAPACITY.

In an action for damages for injuries occasioned by the negligence of defendant, it is admissible for plaintiff to show what wages would be open to him in a business he understood, though he had not followed it for three years, but which he would have the right and ability to resume, were it not for the injuries he had received.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge.  Reversed.

*Burke, Shepard & McGilvra,* for appellant.
*Milo A. Root* and *Brady & Gay,* for respondent.

The opinion of the court was delivered by

WHITE, J.—Appellant was operating a street railway in Seattle and respondent was working for appellant as a

day laborer along its track.    The contract of employment, as claimed by respondent, gave respondent, per day, $1.50 and transportation to and from his work.    His daily work closed at 6 o'clock p. m.    As evidence of respondent's right to transportation, appellant furnished him a book of tickets, which tickets he used when traveling to and from his work.    This book had a stipulation printed thereon exempting appellant from any liability for injury to respondent.    The first book of tickets was furnished respondent a few days after his employment.    At the time of his employment nothing was said to him about his "transportation having any conditions upon it exempting the company from liability, and the contract of employment, it was claimed by respondent, did not provide for transportation so conditioned.    Respondent was injured by negligence of the company while riding on its car, on his way home after his day's work was completed.    The evidence does not show what particular officer or employee was guilty of the negligence which caused the injury.    The car was inward bound to Seattle on the appellant's single-track Green Lake suburban line, leaving the lake end of the line just after 6 o'clock p. m., and the accident occurred within a few minutes after the car started, being caused by a head-end collision with an outward-bound car on the same line, while the cars were on a curve rounding a projecting bluff on the side of the lake, which prevented the motorman of either car from seeing the other until within a short distance from it.    The respondent was riding on the rear platform of the inward-bound car, and received his injuries from the shock of the collision, being thrown against the rear wall of the inclosed part of the car, thus receiving a violent blow on the head, and then falling or being thrown to the ground.    The respondent recovered judgment for $3,000.

The plaintiff (respondent )only testified as to the contract of employment, as follows:

"On the 25th of January, 1899, I met Linder, the foreman of the defendant, on Fifth avenue, close to Pike, and asked him for work; and he says, 'All right; come in the morning.' I says, 'What do you pay?' And he says, 'A dollar and a half a day.' And I says, 'That is very small, ain't it?' And he says, 'We pay a dollar and a half a day and transportation to and from your work.' I says, 'All right, I will come in the morning.' And he says, 'The tool box is between Western avenue and Harrison street; come down there in the morning.' And I walked from my home in the morning and walked home in the evening, and walked out again the next morning down to the tool box, and one day he gave me a book with tickets in it. The foreman of the company gave it to me. I never had any different agreement or contract than that one made at that time."

On cross-examination he testified:

"I went to work for the traction company about the 26th of January last year. The foreman of the track gang hired me on Fifth avenue, close to Pike. I did not see him at the company's office. I had not worked for this same foreman before, but had seen him. He was working for the traction company, and told me that the company would pay a dollar and a half a day and transportation to and from my work. They gave me a book of tickets, * * * I don't know what the printing was. I received that book from the foreman * * * a day or two after I went to work. I cannot say the date when I received my last book from the company while I was at work; it was further back than just a day or two before this accident * * * The last book that I had, the one that I got a little before the accident, was given to me by Linder, the foreman, * * * out at Green Lake. I know Mr. Kempster, the secretary of the company. He did not give me this book in the company's office. * * * I did not sign that condition on the back. If I went to the office and got a book, and he came with the book and pen and ink and

said, 'Put your name on the back,' I put my name on it and put it in my pocket and went out. I don't know the name of the man who would give a book to me at the office. * * * Before this last book was issued to me I had received some books like this at the office and signed my name on the back when the clerk told me to. I suppose that this book that was given to me last was the same sort and had the same cover as those others, but I did not pay much attention to it; I never looked. * * * I got on the car coming into town that night before the accident because I was going home from my work. My day's work was done. When I got on the car again in Fremont (this was the returning car after the accident) the conductor came and wanted the ticket, and I had one in my pocket and I gave him one. * * * He did not collect the fares before the cars came together; he had not got to me to collect the ticket then, and had not taken up the tickets before I was hurt, but he did afterwards, in Fremont. When I went out to Green Lake on the morning of the day I was hurt, I rode out there to my work, and when the conductor called for my fare I gave him a ticket. I went out to Green Lake that morning to go to work, and did not have any other errand out at Green Lake that day. I went just to go to my work, and when I came in it was to go home from my work."

E. Linder, the foreman of the track gang, who employed the plaintiff, testified for the appellant. He was not asked any question relative to the employment of the plaintiff, but his testimony was to the effect that about the middle of June, 1899, he took up from the plaintiff an employee's ticket book which the plaintiff had for use on the line, and that he returned to Mr. Kempster, the secretary of the company, the unused part of the book taken up from Mr. Peterson. He further testified as to the accident, and that he and the members of the track gang, including Peterson, were in the car going home at the end of the day's work.

A. L. Kempster, the secretary of the appellant, testified that he issued to the plaintiff, on May 29, 1899, a book of coupon tickets, and he identified the book taken up from Peterson as the book; that when it was issued it had on it a cover with certain printed matter, and when it was returned the cover was off. No question was asked this witness as to his authority to make contracts for the company, or as to his authority to employ workmen for the company.

Except as hereinafter stated, the foregoing is all the testimony in the case, or offered, touching the employment of the plaintiff, or relative to his transportation. There was testimony tending to show that the plaintiff was injured by the accident, and the nature and extent thereof.

Was the plaintiff a fellow servant of the operators of the cars *at the time of the accident?* The case of *Lundquist v. Duluth St. R. Co.,* 4 Am. & Eng. R. R. Cas. 506 (67 N. W. 1006), cited by appellant, was as follows: The defendant was a street railway corporation operating a street railway in Duluth. The plaintiff was one of a crew of men employed by the defendant, who were engaged in repairing tracks by taking up and relaying the pavement between the rails over which the defendant's street cars, operated by electric power, passed frequently at irregular intervals. Operators of the cars were required by rule to give warning of their approach to the crew of track repairers. Plaintiff was pursuing his work in reliance on the rule. While so engaged, and without notice, he was struck by the car. He was held to be a fellow servant with the motorman. This case is in point only so far as it holds that the motorman and laborer were fellow servants *at the time* the accident occurred. In the case at bar the plaintiff was not injured when actually performing labor as a track layer. The case of *Northern Pacific Railroad Co. v. Hambly,* 154 U. S. 349 (14 Sup. Ct. 983), cited by appellant, holds that

a laborer while working on a culvert under a foreman, and who received an injury *while at work,* through the negligence of a conductor and engineer in moving and operating a passenger train, was a fellow servant of the engineer and conductor. The case of *New England Railroad Co. v. Conroy,* 175 U. S. 323 (20 Sup. Ct. 85), cited by appellant, holds that a brakeman who was killed by the negligence of the conductor *while the train was being operated* and the brakeman was discharging his duties as such on the train, was a fellow servant with the conductor. These cases hold that a common employment existed at the time the accident occurred, and then applied the doctrine of fellow servants.

In the case at bar it is claimed by respondent that the relation of master and servant did not exist between the parties when the plaintiff received the injury. If this was the case, it is useless to discuss whether or not a track layer and operators of street cars are fellow servants during the time they are actually engaged in their common employment. The real question to be determined is, was the plaintiff in the service of the defendant when on the street car at the time the accident occurred? We will first examine the cases cited by the appellant on this proposition.

The case of *Russell v. Hudson River R. R. Co.,* 17 N. Y. 134, was as follows: A laborer was employed by a railroad company *to work in connection with a train of cars.* The laborer lived in New York City. He was employed in loading gravel and sand, at the pits where they were dug, upon cars, for transportation to places upon the railroad where filling was required. He and others employed in this kind of work were paid monthly at a certain per diem. It was the practice of the workmen who lived in New York to come from home in the morning upon the cars of the company, and it was understood that they were to be

brought back at night, paying no fare either way. On the day the accident occurred, the plaintiff went upon the cars with every load of gravel for the purpose of assisting to unload it. After the last load of gravel had been discharged, some paving stones were taken upon the cars, which proceeded towards New York. The stones were thrown off a short distance above Spuyten Duyvel creek, and the plaintiff had then, as was testified, no further duty to perform. *It appeared, however, that some of the workmen acted as brakemen for the gravel train upon which they rode home.* The accident occurred while the cars, after discharging the gravel and stone, were on their way to New York with the workmen residing there. The court decided that the laborer and the engineer of the train through whose negligence the accident occurred were fellow servants, and in so holding said:

"But the main ground relied upon to distinguish this case from those previously decided is, that at the time when the accident occurred the plaintiff was not an employee of the company but a passenger merely, and entitled to protection as such. By the arrangement between him and the defendants he was to be taken home to the city upon the gravel train at night; and he insists that his day's work was completed when the last load of gravel was deposited, and that he was under no further obligation to do anything for the company. That carrying him home was a service to be performed by the company, in consideration of the labor previously done, and constituted a part of his wages; and that it was entirely optional with him to avail himself of this service or not. It is not, I think, entirely clear that the defendants would not have had a right, under their agreement with the plaintiff, to insist upon his returning to the city at night. The gravel train could not be properly managed by the engineer alone. Men were required to act as brakemen in case of accident. It appears that some of the same men who worked in the gravel pit also manned the brakes. A portion of the hands em-

ployed lived in the city, and the defendants may have relied upon them to work the brakes, in case of necessity, upon the return of the train, and may have taken this into consideration in agreeing to bring them home at night. But, conceding that the plaintiff was not bound to return, even if the defendants insisted upon it, it does not follow that while actually returning to the city with the train he was not the servant of the company. If he was a mere passenger, he was not bound to do anything to facilitate the return of the train. If an emergency arose, requiring the use of the brakes, he might refuse to raise his hand. If an obstruction was met with upon the track, he might fold his arms until the company removed it; and what he might do in this respect every other hand returning to the city under similar circumstances might also do. Such could not, I think, have been the true relation between the parties. The plaintiff was employed by the defendants as a day laborer. He was to be taken up at the city where he lived in the morning, and set down there at night; and he should, I think, be regarded as having been, during the entire interval, the servant of the company, and bound as such to render aid if necessary in promoting the passage of the train both to and from the city. This is decisive of the case."

It will be seen that this decision rests upon the theory that until the train returned to New York the relation of master and servant continued, and, if necessary, the servant was bound to render aid in promoting the passage of the train both to and from the city. It is clear in the case at bar that the plaintiff had nothing whatever to do with operating the cars or with dispatching them on their time schedule. For that reason the case cannot be held to be in point.

The case of *Gillshannon v. Stony Brook R. R. Corp.*, 10 Cush. 228, was as follows: The plaintiff was a common laborer, employed in repairing the defendants' roadbed at a place several miles from his residence. Each morning

and evening he rode with other laborers to and from the place of labor on the gravel train of the defendants. This was done with the consent of the company, and for mutual convenience; no compensation being paid, directly or indirectly, by the laborers for the passage, and the company being under no contract to convey the laborers to and from their work. The plaintiff was injured by reason of a collision between the train and a hand car, through the negligence of those having charge of the train. It was held that plaintiff could not recover. It will be observed in this case the company was under no contract to convey the laborer to and from his work, and no compensation was paid directly or indirectly by the laborer for his passage.

In *Seaver v. Boston & Maine R. R.,* 14 Gray, 467, the court below said:

"It appeared that the plaintiff was employed by the defendants to work as a carpenter in repairing fences along the line of the road, in repairing bridges, making switch frames and other similar work; that he commenced to work on May 23, 1856, at the rate of one dollar and fifty cents per day; that he lived in Lawrence, and that at the time he agreed to work for the defendants at the above rate he asked the agent who employed him if he could be permitted to ride to his place of work without paying fare, and was told that he could, and that none of the workmen employed by the defendants paid fare; that he worked for the defendants from May 23d till September 11th, 1856, when the accident happened by which he was injured, during which time he was paid his wages monthly at the rate aforesaid, and rode daily to and from his place of work without paying fare; and that he was so riding at the time he sustained the injury for which he sought compensation in this action. Upon these facts I was of opinion and ruled that the plaintiff could not recover for injuries sustained by him, occasioned by the negligence or carelessness solely of another servant of the defendants,

employed as engineer to manage and run their locomotives."

The supreme court affirmed this ruling. In this case the company was under no contract to convey its employee to the place where he worked, and it received no compensation, directly or indirectly, for so doing.

In the case of *Wright v. Northampton & H. R. Co.,* 122 N. C. 852 (29 S. E. 100) the facts were that the plaintiff was a section master in the employment of the defendant, and slept sometimes at Gumberry, the northern terminus of the road, sometimes at Jackson, the southern terminus, and sometimes at Mowfield, an intermediate station. After his day's work was over he went to his sleeping place on a hand car or on the defendant's train, as suited his convenience. On the night when the plaintiff was injured, he and the laborers working under him having left off work for the day, with a light for a signal on the side of the railroad, were waiting for the train on its way to Gumberry. All were taken on; the plaintiff getting on the engine, and the hands on the flat cars loaded with logs. No fares at any time were received or expected from the plaintiff. The court held that the plaintiff was not a passenger, and that he was a fellow servant with the engineer, citing in support thereof *Gillshannon v. Railroad Corp., supra,* and *Seaver v. Railroad Co., supra;* also, *State v. Western Maryland R. R. Co.,* 63 Md. 433, and *Tunney v. Midland Railway,* L. R. 1 C. P. 291. In the last mentioned case plaintiff was employed as a laborer to assist in loading what is called a "pick-up train" with materials left by plate layers and others upon the line. One of the terms of his engagement was that he should be carried by the train from Birmingham (where he resided, and whence the train started), to the spot at which his work for the day was to be done, and be

40—23 WASH

brought back to Birmingham at the end of each day. As he was returning to Birmingham, after his day's work was done, the train in which the plaintiff was, through the negligence of the guard who had charge of it, came into collision with another train, and the plaintiff was injured. It was held that inasmuch as the plaintiff was being carried, not as a passenger, but in the course of service, there was nothing to take the case out of the ordinary rule which exempts a master from responsibility for an injury to a servant through the negligence of a fellow servant when both are acting in pursuance of a common employment. In this case plaintiff was employed in connection with a particular train and was to travel upon it in performance of his contract.

The case of *State v. Western Maryland R. R. Co., supra,* supports the contention of the respondent in this case. In that case the court says:

"Abell was employed as regular brakeman on a passenger train that left Union Bridge every morning except Sundays for Baltimore City, and returned to Union Bridge every afternoon, Sundays excepted. Abell was employed and paid by the day, and was liable to be discharged at any time. Union Bridge was at one end of his route and Baltimore City at the other. When the train reached Union Bridge on Saturday evening, it remained there until Monday morning, and Abell was expected to be at Union Bridge from Saturday evening until Monday morning, unless he had permission to leave. Abell's family lived in Baltimore, and he had permission from the conductor to go to Baltimore on Sunday, 2d of September, 1883, and while traveling to Baltimore from Union Bridge on a train of the appellee, was killed by a collision. The conductor of the train upon which Abell acted as brakeman had a regular pass for himself and all his crew to go to Baltimore on the train upon which Abell was killed. Abell, as one of the crew, was traveling on this pass, and paying no fare, at the time he was killed.

The deceased was not paid for Sundays, unless he was required for duty. He was not required for duty on Sunday, September 2, 1883, the day he was killed. The first question with which we have to deal is the inquiry whether on Sunday, September 2d, 1883, Abell was in the employment of the railroad company, in such a manner that the company is entitled to claim the benefit of the rule that would exempt it from liability for the negligence of its other employees? A case very similar to the one before us has already been decided by this court. In the case of *Balto. & Ohio R. R. v. State, use of Trainor et al.,* 33 Md. 542. Trainor was employed and paid by the day. At six o'clock p: m. his day's work was ended, and on a day that he had been at work, but had finished his day and laid aside his tools, and was on his way home, and not on that portion of the track upon which he worked, the injury occurred. He had expected to resume his work the next morning. With these facts before it, this court decided that at the time of the injury he would not be considered in the employment of the company. The decision in *Trainor's Case* proceeds upon the assumption that he was not at the time of the injury acting in the service of the company. That his day's labor was over for the day, and although he expected to resume work again on the next day, that when his day's work was over he occupied toward the company the position of a stranger, and was entitled to all the privileges he would have had if he had been an employee. The facts in this case are stronger than those in *Trainor's Case.* The deceased had finished his week's work on Saturday evening, expecting to resume it on Monday. He had been expressly relieved from all service to the company until Monday, and was given permission to go to Baltimore. He could call the Sunday on which he was killed entirely his own day, and employ himself in it as he pleased, and he therefore could not be considered on that day as acting in the service of the company."

The case of *Vick v. New York Central & H. R. R. R. Co.,* 95 N. Y. 267 (47 Am. Rep. 36) was as follows:

"The evidence shows that he [plaintiff's intestate] had been in the employment of the defendant as a foreman in its tin-shops at Rochester prior to December, 1876. The defendant at that time removed its shops from Rochester to Buffalo, but before their removal the deceased had left defendant's employment. Many of the employees in the tin-shop at Rochester continued in the employ of the defendant after it had removed its shops to Buffalo, but still resided at Rochester. By an arrangement made between them and the defendant they were to be taken to Buffalo on Monday morning and brought back Saturday evening of every week in the defendant's car. Sometimes they were carried in a baggage car, sometimes in a passenger car, and afterward in a passenger car called a shop car, in which other persons, who paid fares, were permitted to ride. No fare was required of the men thus employed and transported, but by agreement a deduction was made from their wages at an amount fixed per hour, being the same as when at work, for the time they were upon the train, their wages beginning when they reached the shops at Buffalo and ending when they left them. In the month of January, 1877, the deceased applied for his former position as foreman, and was employed accordingly by the defendant. He asked if he could go with the rest of the men, and he was told he would be passed with the rest of the men in the defendant's shop car. Upon these terms he again commenced working for the defendant as foreman in the tin-shop at Buffalo. The only pass given was one to the master mechanic, Mr. Gould, under which all the men who lived at Rochester and worked in the shops at Buffalo traveled. There was no evidence upon the trial showing that the deceased ever saw the pass, or that he was acquainted with its contents. He was paid for his work in accordance with the arrangement already stated. It appears that the contract for his employment in the tin-shops, and for traveling between Rochester and Buffalo, while engaged in his work, was one and the same contract, made at the same time, and the whole must be taken together as an entire agreement. The essence of the contract was that the deceased should work for the defendant, as foreman of the tin-shop,

and in consideration thereof it should pay him a price fixed per hour, and should transport him from his residence to the place where the work was to be done, and back again, upon its railroad without charge. At the time of the accident the deceased was in the shop car of the defendant, on his way to the place where he was to perform services. As his transportation was a part of the contract, he was there by virtue thereof as an employe. His services had then commenced under the contract; he paid no fare as an ordinary passenger would have done, but was being transported under the pass referred to. Under these circumstances the deceased was, at the time of the accident, in the car under the terms of the contract made for the rendition of his services, and not as a passenger. It was essential that he should be in the car at the time and place of the accident, to enable him to perform the contract of service into which he had entered. But for this he would not have been there at the time, and his traveling on this occasion was in the capacity of an employe and not as a passenger. If two separate contracts had been intended to have been made, one for the services of the deceased and the other for his transportation, it is fair to assume that the amount allowed for his wages would have been increased sufficiently to pay his fare as a passenger. Clearly such could not have been the intention, as the contract made was a single one which related only to the services of the deceased and the compensation he was to receive for the same. It was part of this contract of service that he was to be carried to and from the place of his work every week on the defendant's railroad, and on a train which was usually provided for that purpose. The right to go and return being inseparable from the contract to do the work, it is not obvious that any valid ground exists for claiming that the deceased was a passenger and paid his own fare. As to the position that because his hours of labor had not commenced at the time of the accident, the deceased was to be regarded as a passenger, it is a complete answer to say that his conveyance to and from his work was incident to his employment, and was part of the contract of service under which he was engaged. This remark will also apply

to the position of the respondent's counsel that traveling to the shop where work was to be done was not the beginning of service but an act done to obtain the service. If it was a part of the contract, then obviously it cannot be said that the deceased gave a portion of his wages as the price of transportation independent of his contract. He was as much under the control of the defendant when traveling as any other employe who was transported by virtue of a contract with the company for his services, which contract provided for the right to go and come upon the defendant's cars to and from the place where he was required to work. Although he had no particular duty to discharge while traveling, yet the traveling of the deceased was not as a passenger but as an employe under the contract of service between him and the defendant."

In this case the court expressly held that the principle announced in *O'Donnell v. Allegheny Valley R. R. Co.,* 59 Pa. St. 239 (98 Am. Dec. 336), hereafter cited, was not sound law. In the *Vick Case* the court held that the plaintiff, when traveling under his contract, was as much under the control of the defendant as any other employee. It will be observed, also, that the plaintiff was to travel usually on a train provided for that purpose; that it was *essential* that the plaintiff should be in the car at the time and place of the accident, to enable him to perform the contract of service into which he had entered. It was not essential in the case at bar that the plaintiff should be in the particular car he was in when the accident occurred. He was not under the necessity of riding in any car in order to perform his contract of track laying. He might have walked to his place of labor and home, had he seen fit, without violating any of the terms of his contract.

The respondent cites several cases in support of his contention that when the injury occurred he was not acting in the service of the appellant. We will now consider them. The case of *Baird v. Pettit,* 70 Pa. St. 477, was as follows:

The plaintiff was employed as draftsman in the defendant's locomotive works. A carpenter employed in "jobbing" for defendant in any part of the works was, by the direction of the defendant, superintending the excavation of a cellar under the building, employing and paying hands, etc. He had a large pile of dirt thrown on the public foot-walk. The plaintiff, in leaving the house in the dark, after ceasing his day's work, fell over the dirt and was injured. Held, that the plaintiff and carpenters were not fellow servants in the same common employment, so as to relieve the defendants from liability from the carpenter's negligence. In this case the court said:

"The relation of master and servant did not exist between the parties when the plaintiff received the injury. He was not then in the service of the defendant; he had quit work and was on his way home. He was no longer subject to the defendant's control, or bound to obey his orders. As soon as he left the building he was his own master. He was then no more in the defendant's service than any other citizen passing along the street, and he was entitled to the same rights and immunities."

In the case of *Gillenwater v. Madison & I. R. R. Co.*, 5 Ind. 339 (91 Am. Dec. 101), the plaintiff was employed to frame and build a bridge. He was directed by defendant to go to a certain station to help load some timbers. He was traveling free of fare when injured by negligence of the employees who were running the train. Held, that he could recover. In the case of *Fitzpatrick v. New Albany & S. R. R. Co.*, 7 Ind. 436, plaintiff was employed by defendant as laborer to ballast road. Defendant agreed to transport him to and from his home to where he should be working. While being so carried he was injured by negligence of the engineer operating the train. Held, that the defendant was liable. Among other things, the court said:

"He was not, it is true, a mere passenger;    *    *    *
but under an agreement with the defendants, he was to be
regularly conveyed to and from his work.   This, it seems
to us, involves an implied engagement that they would
convey him as safely and securely as if really he had been
a passenger in the ordinary sense of the term."

Upon the question of liability of a street car company
to an employee, working as track repairer, while riding
upon its car, the supreme court of Colorado, in the case
of Denver & B. P. Rapid Transit Co. v. Dwyer, 20 Colo.
132 (36 Pac. 1106), says:

"He was in the defendant's employ at the time, and it is
undisputed that it was the defendant's custom to furnish
transportation to such employees to and from their work;
and that upon this occasion, the hand car being out of
order, the foreman substituted transportation by the train.
Although no fare was collected or expected from the plaint-
iff, the evidence shows that he was lawfully upon the
train."

And the court held that he was entitled to recover
against the company for injuries occasioned by the negli-
gence of the engineer in managing the train.

In the case of *Rosenbaum v. St. Paul & D. Ry. Co.*, 38
Minn. 173 (36 N. W. 447, 8 Am. St. Rep. 653), the
supreme court of Minnesota held that a man working as a
grader in ballasting the track could recover for injury
sustained when riding on the train of defendant without
having paid any fare, and at a time when he might be
considered an employee, although not actually working at
that time; it appearing that the company was in the habit
of carrying these workmen to and from their work.

In *Stuber v. Louisville & N. R. Co.*, 102 Fed. 421,
plaintiff, who was a skilled machinist, and employed by
defendant to keep its pumps, tanks, wells, etc., in good
working order, while riding on one of defendant's engines

to reach a point where his duties called him, was injured by the engineer's negligently running the engine into a freight train. Held, that plaintiff and the engineer were not fellow servants in such sense as to prevent recovery by plaintiff for the damages sustained.

The case of *O'Donnell v. Allegheny Valley R. R. Co.,* 59 Pa. St. 239, is in point, if the contract was as claimed by respondent. In that case the railroad company hired O'Donnell to do carpenter work upon a bridge fifteen miles from where he lived. The company agreed to pay him a certain price per day and transport him on its trains to and from his place of work free of charge. One day, after O'Donnell had finished his day's work and was riding home on the train, a wreck occurred, and he was badly injured. The supreme court of Pennsylvania held that he was not a servant of the railroad company when hurt, but was a passenger for hire. Among other things, the court said:

"O'Donnell traveled not as a part of his employment as a carpenter at the bridge, but as a passenger from and to his home. He was not hired to pursue his business *on* the train, but was carried in consideration of a reduction in the price of his wages. When his day's work was performed he was no longer in the service of the company, but was free to go or to stay, and when he traveled in effect paid his fare out of his wages."

We think that when the respondent had ceased his day's work at track laying, he was not in the employ or under the control of the appellant until he again resumed track laying under the superintendency of Linder, the foreman of the track gang. Linder certainly had no control over the respondent while going to and from his work, and the respondent was not under any obligation to go to and from his work of track laying on the cars of the appellant. At six o'clock his day's work ended. He had no rights

and no privileges on that car, other than or different from those of any other passenger. He was not required to perform services on the car. He was under the control of the conductor of the car and not of his own foreman, just as any other passenger on the car. As was said by the court in *Hutchinson v. York, etc., Ry. Co.,* 6 Eng. Ry. & Canal Cases, 438, cited in *State v. Western Maryland R. R. Co., supra*:

"* * * we do not think a master is exempt from responsibility to his servant for an injury occasioned to him by the act of another servant where the servant injured *was not at the time of the injury acting in the service of his master*. In such a case the servant is substantially a stranger and entitled to all the privileges he would have had if he had not been a servant."

Holding as we do that, at the time of the accident, the respondent was not a servant of the appellant, it is unnecessary for us to consider further the doctrine of fellow servants. And this disposes of the first, fourth and sixth assignments of error, because, where two cars meet in a head-end collision, on a single-track railway, there must be negligence somewhere, by somebody or other. That negligence, in the absence of other showing, must be assumed to have been primarily the negligence of the defendant's employees in charge of the cars, who caused or allowed them to come into collision. It being primarily the negligence of those employees, it is imputable to their employer, and that employer is in law responsible for its consequences.

The plaintiff, in his complaint, alleged that the defendant hired the plaintiff to work as a laborer on its roads, agreeing to pay him therefor the sum of one and one-half dollars per day and transportation to and from his work on the cars of the defendant. The defendant denied that it agreed to pay the plaintiff therefor the sum of one and a

half dollars per day and transportation to and from his work on the cars of the defendant; and the defendant denied that it then or at any other time agreed to pay or furnish to the plaintiff transportation to and from his work on the cars of the defendant, or transportation at all on its cars, or on its road or roads. When the plaintiff offered his evidence as to his transportation and the tickets in connection therewith, under the denial of the defendant, it was competent for it to offer in evidence any material matter to defeat the alleged contract or to show a different contract. The fourth separate answer to the complaint, and as new matter constituting third affirmative defense, to which a demurrer by the plaintiff was sustained, and the same plea as finally amended and to which a reply was filed, was an attempt on the part of the defendant to plead its version of the alleged contract. It added nothing to the denial already made. This defense cannot be construed as doing more than the denial. *Puget Sound Iron Co. v. Worthington,* 2 Wash. T. 483 (7 Pac. 882, 886), and *Williams v. Ninemire, ante,* p. 393.

The defendant, on the cross-examination of the plaintiff and in its testimony in chief, sought to show that the ticket book given to the plaintiff for his transportation to and from his work, and on which he was being carried at the time of the accident, contained the following condition:

"In consideration of this pass, I hereby agree to assume and do assume all risks of accidents, damages, and loss sustained by me while using it, and expressly agree with the Seattle Traction Company that it shall not be liable under any circumstances, whether by reason of negligence of its agents or otherwise, for any injury or loss to me as aforesaid."

And it offered further to show that the plaintiff, when the book was delivered to him, was told by the secretary of the company to sign it on a line at the foot of the con-

dition intended for his signature, and that the plaintiff did sign his name as directed, and that the book of tickets was, after it was signed by the plaintiff, signed by the secretary, and that the ticket book so signed was the one plaintiff was using at the time of the accident, and that this book contained one hundred single-fare tickets. All this testimony was excluded on the ground that it was immaterial, and in various ways the defendant has saved exceptions to the rulings of the court, as they were made during the progress of the trial, excluding this evidence. Was this evidence material, under either the denials or the affirmative answer of the defendant? The defendant sought by this evidence to show that the plaintiff, under his contract with the defendant and in consideration that the defendant would employ and pay the plaintiff one dollar and a half a day for track laying, agreed to accept from the defendant, for transportation on the cars of the defendant to and from his work, an employee's ticket limiting the liability of the defendant. Was this contract against public policy? In the case at bar the plaintiff was traveling on the carrier's line not as an ordinary passenger, but incidentally to his service as an employee. The carrier was not required by law or duty to give the plaintiff work as a track layer, and, when he sought to obtain such work, it seems to us that he had a perfect right to contract, as an incident to the principal contract, that he should be carried by the defendant over its lines to and from his work, subject to the condition that the plaintiff would assume, while being so transported, all risk of accidents, etc., contained in the conditions which the defendant sought to prove. The plaintiff was not bound to enter or remain in the defendant's employ. Both parties were free, the one owing no duty, the other being under no obligation to travel on the defendant's line otherwise than as an ordinary

passenger, paying fare, and entitled to full redress for injury through negligence.

The cases of *Railroad Co. v. Lockwood,* 17 Wall. 357, and *Railway Co. v. Stevens,* 95 U. S. 655, have been reviewed by the supreme court of the United States in the case of *Baltimore & O. S. Ry. Co. v. Voigt,* 176 U. S. 498 (20 Sup. Ct. 385). In that case the railway company, being engaged as common carrier in the business of transporting passengers and freight for hire, entered into a contract in writing with an express company authorized by law to do, and actually doing, the business known as "express business," by which contract the railroad company agreed, solely upon the consideration and terms hereinafter mentioned, to furnish for the exclusive use of such express company, in the conduct of its said express business over said railway company's lines, certain privileges, facilities and express cars to be used and employed exclusively by said express company in the conduct of such express business; and to transport said cars and contents, consisting of express matter, in its fast passenger trains, together with one or more persons in charge of said express matter, known as "express messengers," for that purpose to be allowed to ride in said express cars; to transport such express messengers, for the purposes and under the circumstances aforesaid, free of charge. And by said contract it was agreed on the part of said express company to pay said railroad company for such privileges and facilities, and for the furnishing and use of said express car or cars, and for such transportation thereof, a compensation named in said contract; and by which contract it was further agreed by the express company to protect the railroad company and hold it harmless from all liability it might be under to employees of the express company for any injuries sustained by them while being so transported by said

railroad company, whether the injuries were caused by negligence of the railroad company or its employees, or otherwise. Voigt made application to said express company, in writing, to be employed by it as express messenger on the railroad company, between which and such express company a contract as aforesaid existed; and such applicant, pursuant to his application, was employed by the express company under a contract in writing, signed by him and it, whereby it was agreed between him and the express company that he did assume the risk of all accident or injury he might sustain in the course of said employment, whether occasioned by negligence or otherwise, and did undertake and agree to indemnify and hold harmless said express company from any and all claims that might be made against it, arising out of any claim or recovery on his part for any damages sustained by him by reason of any injury, whether such damages resulted from negligence or otherwise, and to pay said express company, on demand, any sum which it might be compelled to pay in consequence of any such claim, and to execute and deliver to said railroad company a good and sufficient release, under his hand and seal, of all claims and demands and causes of action arising out of or in any manner connected with said employment, and expressly ratified the agreement aforesaid between said express company and said railroad company. Held, that Voigt, occupying an express car as a messenger in charge of express matter, in pursuance of the contract between the companies, was not a passenger within the meaning of the case of *Railroad Co. v. Lockwood,* 17 Wall. 357; that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger; and that such

a contract did not contravene public policy. In the *Voigt Case* the supreme court, in speaking of the decision of the court in *Railroad Co. v. Lockwood* and *Railway Co. v. Stevens,* says:

"The principles declared in those cases are salutary, and we have no disposition to depart from them. At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare. It was well said by Sir George Jessel, M. R., in *Printing, &c., Co. v. Sampson,* L. R. 19 Eq. 465: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.' "

In the *Voigt Case* it was held that the messenger was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger. So, in the case at bar, the plaintiff was not constrained to enter into the contract whereby the street car company was exonerated, but by entering into it he obtained employment as a track layer. There is no difference in principle between the two cases. This court, in the case of *Muldoon v. Seattle City Ry. Co.,* 7 Wash. 528 (35 Pac. 422, 22 L. R. A. 794, 38 Am. St. Rep. 901), says:

"The very idea of a public or common carrier, with its features of monopoly and right of eminent domain, bears with it, to the modern mind, the duty of conveying passengers with safety, so far as its own acts are concerned, upon the payment of reasonable compensation. The duty which the carrier owes to the public and to the individual is to perform the service safely, without any limiting conditions: and therefore such conditions, when the imposition of them is attempted, violate an implied duty and are justly held void. But when the intending passenger proposes to the carrier that it do something for him, which it is not, under any conceivable circumstances, required by law or duty to do, viz., to carry him without any compensation whatever, and when the whole matter is at the option of either party to agree or not, it is difficult to see why public policy should step in and deny the right of the carrier to limit its chances of loss in the operation, even though a careless servant cause unintentional injury to the passenger."

In the case just cited the same principle is laid down as in the case of the *Baltimore & Ohio Ry. Co. v. Voigt, supra.* We think the evidence offered was admissible, as tending to show a contract for transportation different from that alleged in the complaint, and that the court erred in refusing to admit the same. We do not mean, however, to hold that the mere signing of the condition, under the circumstances under which it was signed, is conclusive on the plaintiff, as showing that the contract of transportation was as claimed by the defendant. The allegations of the complaint and the evidence of the plaintiff are to the effect that the transportation was to be unconditional. If such was the case, then the plaintiff would be a passenger for hire and entitled to all his rights as such. The fact that the plaintiff was employed by the day and could quit at any time, and that he received from time to time ticket books with conditions thereon, like that offered to be proven, would be strong circumstances to show that

the contract for transportation was as the defendant contends, but it is not conclusive. It must be remembered that there was no showing or offer to show that the secretary was authorized to enter into contracts for the employment of track layers, or that he was authorized to bring about a modification of the contract originally made by Linder with the plaintiff, and that at the time Linder employed the plaintiff nothing was said to the latter about his transportation having a stipulation attached which should exempt the company from liability. All these facts and the circumstances under which the plaintiff signed the condition were for the consideration of the jury, under proper instructions, from which they might determine whether the contract of transportation was unconditional, as claimed by the plaintiff, or was conditional, as claimed by the defendant.

Dahl, an acquaintance of the plaintiff, testified as to his appearance prior to the accident as having been that of "a healthy-looking man—a strong laborer," and as to his appearance since, as looking more thin and pale, and not seeming to hear as well as before, and being more quiet in manner. The plaintiff's wife testified as to his excited condition when he came home on the evening after the accident, and his complaining that night of pain in his head and back, and as to his impaired condition in various respects from that time onward. This testimony was admitted over the defendant's objection and exception. It is claimed by the defendant that this testimony falls under the head of expert and opinion evidence, and as the witnesses were people of ordinary observation, and not qualified as experts, they should not have been allowed to testify to the facts recited. One was the wife and the other an acquaintance of the plaintiff. They had observed his ap-

pearance and conduct before and after the accident. We think this evidence was admissible.

In *Hardy v. Merrill*, 22 Am. Rep. 441, the court says:

"Opinions concerning matters of daily occurrence, and open to common observation, are received from necessity (*Commonwealth v. Sturtevant*, 117 Mass.); and any rule which excludes testimony of such a character, and fails to recognize and submit to that necessity, tends to the suppression of truth and the denial of justice. The ground upon which opinions are admitted in such cases is that, from the very nature of the subject in issue, it cannot be stated or described in such language as will enable persons, not eye-witnesses, to form an accurate judgment in regard to it. *DeWitt v. Barly*, 17 N. Y. 340; BELLOWS, J., in *Taylor v. Grand Trunk Railway*, 48 N. H. 304; S. C., 2 Am. Rep. 229. How can a witness describe the weight of a horse, or his strength, or his value? Will any description of the wrinkles of the face, the color of the hair, the tones of the voice, or the elasticity of step convey to a jury any very accurate impression as to the age of the person described? And so, also, in the investigation of mental and psychological conditions; because it is impossible to convey to the mind of another any adequate conception of the truth by a recital of visible and tangible appearances; because you cannot, from the nature of the case, describe emotions, sentiments and affections, which are really too plain to admit of concealment, but, at the same time, incapable of description; the opinion of the observer is admissible from the necessity of the case; and witnesses are permitted to say of a person: 'He seemed to be frightened;' 'he was greatly excited;' 'he was much confused;' 'he was agitated;' 'he was pleased;' 'he was angry.' All these emotions are expressed to the observer by appearances of the countenance, the eye, and the general manner and bearing of the individual; appearances which are plainly enough recognized by a person of good judgment, but which he can not otherwise communicate than by an expression of results in the shape of an opinion."

See, also, *Union Pacific Ry. Co. v. Gilland,* 4 Wyo. 395 (34 Pac. 953).

The plaintiff testified that he had worked as a deck-hand on a steamboat for about six years, on and off, ending three years before the day of the accident. Since then his activities had been confined to fishing in the summer season and working as a track-hand on street railways during the winters. The defendant claims that as the plaintiff had not been working on a steamboat for three years, and did not claim to intend returning to that calling, it could not fairly be regarded as his occupation, or as one of his occupations, either present or prospective, when he received his injuries; that, therefore, the earnings of a steamboat hand at that time testified to by the plaintiff had nothing to do with the question of how much his physical impairment due to his injuries might deprive him of earning. It was proper to show what wages would be open to the plaintiff in a business he understood, and which he would have the right to resume were it not for the injuries which prevented him from again entering that business. This disposes of the third assigned error.

For error of the court in rejecting the testimony hereinbefore indicated, the judgment of the court below must be, and the same is, reversed, and this cause is remanded for a new trial in accordance with the views herein expressed.

ANDERS and FULLERTON, JJ., concur.

DUNBAR, C. J., dissents.

## OPINION ON REHEARING.

WHITE, J.—The opinion in this case, *ante,* p. 615 (63 Pac. 539), was filed December 27, 1900. A rehearing was granted. It is necessary only to modify our views in one respect. In the original opinion we said:

"The carrier was not required by law or duty to give the plaintiff work as a track layer, and, when he sought to obtain such work, it seems to us that he had a perfect right *to contract,* as an incident to the principal contract, that he should be carried by the defendant over its lines to and from his work, subject to the condition that the plaintiff would assume, while being so transported, all risk of accidents, etc., contained in the conditions which the defendant sought to prove."

A more critical examination of the pleadings in this case satisfies us that the question whether the plaintiff and defendant could so contract is not involved, and that point may still be considered open and undecided. The fourth affirmative defense, in substance, is that, if the plaintiff was traveling on one of the cars of the defendant at the time mentioned in said complaint, and if he then received any such injuries as are therein alleged, said plaintiff was then traveling on one of the defendant's cars, along one of its lines of street railway, not as a passenger paying fare for transportation of himself on said car, but by virtue of a free pass ticket, which the defendant had theretofore furnished him and which was accepted by the plaintiff under an agreement that he, the plaintiff, would assume all risks of damages and loss sustained by him while using it, and that the plaintiff expressly agreed with the defendant that the defendant should not be liable under any circumstances, whether by reason of negligence of its agents or otherwise, for any injury or loss to the plaintiff; that the same had been furnished by the defendant to the plaintiff *gratuitously, without any consideration therefor, and not in pursuance of any contract, express or implied,* of the defendant with the plaintiff to furnish the same to him on account of his being in the employ of the defendant, and the same was so furnished to him, not as a compensation or partial compensation for

any work or labor performed or to be performed, but solely *as a donation* by the defendant to the plaintiff of the privilege of free transportation. It is alleged that the tickets so furnished, on which the plaintiff was traveling, were put up in books, on the back of which the agreement was indorsed. The answer also specifically denied that the defendant agreed to pay the plaintiff the sum of one and a half dollars per day and transportation to and from his work on the cars of the defendant. The evidence rejected was offered to sustain the facts pleaded in the fourth affirmative defense, and we think it was admissible for that purpose, under the rulings of this court in *Muldoon v. Railway Co.,* 7 Wash. 528 (35 Pac. 422, 22 L. R. A. 794). But we expressly hold that if the respondent's transportation *constituted a portion of the consideration for his services,* he became a passenger for hire, just the same as anybody else who parts with anything of value for transportation; but if the consideration for his services is independent of his transportation, and his transportation is a mere gratuity bestowed upon him by his employer, as pleaded in the fourth separate defense herein, he stands like any one else traveling on a free pass so conditioned, notwithstanding his employer would not probably have bestowed the transportation if the recipient had not been in his employ.

The original opinion is modified as herein expressed, the judgment of the court below is reversed and this cause remanded for a new trial.

FULLERTON, ANDERS, MOUNT and HADLEY, JJ., concur.