## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. BROWNING.

[No. 4,733.   Filed May 31, 1904.   Rehearing denied October 4, 1904.
Transfer denied November 18, 1904.]

1. NEGLIGENCE.—*Contributory.*—*Burden of Showing.*—It was not necessary for the plaintiff to negative contributory negligence in his complaint for damages for personal injuries, and where such complaint did not show such contributory negligence, affirmatively, it was sufficient as to such fact.   p. 91.

2. RAILROADS.—*Street Railway Crossings.*—*Care Required.*—A person in charge of a street car operated by electricity has the same right in crossing a railway track at a street crossing, as a person in charge of any other vehicle. He must use ordinary care under the circumstances.   p. 93.

3. NEGLIGENCE.—*Street Crossing.*—*Contributory Negligence.*—Where it appeared that the plaintiff, a motorman in charge of a street car, with a clear view of the railroad track, continued to run his car until it was on such track, his car being completely under control, and running about one and a half miles an hour, the railway train being in full view, the bell ringing, and the motorman familiar with the train, knowing its schedule time, and having no reason to believe such train has passed, such conduct can not be reconciled with the observance of ordinary care on plaintiff's part, and no recovery can be based thereon.   p. 94.

4. SAME.—*Railroad Street Crossing.*—*Duty of Motorman.*—Where a person in charge of a street car is compelled to cross a railroad track where his view is obstructed, he must bring his car to a stop and go forward to determine if it be safe to cross, and a failure to use such precautions is ordinarily, as a matter of law, contributory negligence.   p. 94.

From Bartholomew Circuit Court; *F. T. Hord,* Judge.

Action by Vincent F. Browning against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*M. Z. Stannard* and *C. S. Baker,* for appellant.
*J. F. Cox* and *A. N. Blessing,* for appellee.

ROBY, P. J.—Action to recover damages on account of personal injuries caused by a collision at a railroad crossing. Trial, verdict and judgment for plaintiff for $1,600,

The errors argued are that the court erred in overruling a demurrer to the complaint, a motion for judgment on answers to interrogatories returned by the jury with the general verdict, and a motion for a new trial; the ground relied upon in the latter being that the verdict is not sustained by the evidence.

1. It was not necessary to negative contributory negligence in the complaint. Contributory negligence does not appear affirmatively from its allegations, and, no other objection being made to the pleading, the demurrer was correctly overruled.

The negligence charged against appellant was the running of its train up to and over the street crossing at a dangerous rate of speed and without signals. A street car track crossed appellant's railway at the point of collision. Appellee was a motorman employed by the street car company, and was injured by the collision of appellant's passenger-train with an electric street car operated by himself as motorman. An ordinance of the city of Columbus, within which the collision occurred, restricted the rate of railroad trains within said city to four miles an hour. The train in question was run at the rate of sixteen miles an hour. It was a regular passenger-train due to leave Columbus station at 4:15 o'clock p. m. each day. Appellant contends that the facts exhibited by the answers to interrogatories established contributory negligence on the part of appellee, no other proposition being argued.

The accident occurred at Chestnut street. It is shown by the answers that appellant's track ran in a straight line from a point 1,200 feet east of said street to a point 1,700 west thereof, crossing the street at right angles; the right of way being as much as twenty feet wide. The street and car track thereon were substantially level, except that the center line of the railroad track was sixteen to eighteen inches higher than a point in the street eighteen feet north thereof. There was a cottage house and wood-shed on the

lot at the northwest corner of Chestnut street and appellant's right of way, the same being twenty-five feet wide and fourteen feet high, located eleven feet west of the west line of the street and twelve feet north of the right of way. The wood-shed was sixteen feet long, ten feet wide and ten feet high. It was located eighty-six feet west of the street. There was a tight board fence three and one-half to four feet high along the north side of the right of way to a point eighty-six feet west of the street. There was a picket fence along the west side of the street, in front of the cottage, two and one-half feet high and forty feet long. There was a shade tree, six inches in diameter, nineteen and one-tenth feet north of the north rail of appellant's track and seven and eight-tenths feet east of the west line of the street. None of its branches were nearer said rail than eight and three-fourths feet, the lowest one being six and three-fourths feet above the ground. There were three fruit trees on the lot, north of the fence, next to the right of way. No limbs extended beyond the right of way line. There was an open grape arbor fifty feet west of the street and eight and one-half feet north of the right of way. There was a telephone pole ten inches in diameter and twenty-five feet high in the street ten feet north of appellant's tracks, and seven or eight feet from the west street line, and a telegraph pole thirteen inches in diameter and thirty feet high on the right of way fifty-two feet west and seven feet north of the north rail. There was also a guy post and another telegraph pole within the right of way at some distance from the one described, and no other obstructions to appellee's view of appellant's track west of the street after he came within twelve feet of the rail, approaching as he did from the north. He approached the track standing upon the uninclosed front platform of a street car. The car was twenty-six feet long, ten feet high, and propelled by electricity. He had his hands upon the levers used in starting and stopping the car. He was an experienced

motorman, was familiar with the crossing, and accustomed to run cars over it. He stopped the car when its extreme front was ten feet north of the north rail of the track. It stopped "but a moment." When he was within six feet of the track he looked to the west, and saw appellant's train ninety-five feet distant. He could then see 1,700 feet west along its track. When he was eight to nine feet north of said track he could see the same distance except for the two telegraph poles and the guy post referred to. When twelve feet distant he could see 325 feet.· There were steps on the platform. When appellee stopped, he could, by leaving the car and stepping three or four feet in advance, have obtained a clear and unobstructed view of appellant's track for 1,700 feet to the west and 1,200 feet to the east. The rumble of the train could be heard one block from the track. There was nothing to prevent appellee from seeing to the south, east and west as he approached and passed over the crossing. The car was running one and one-half miles an hour as it crossed the north line of defendant's right of way. Appellant's passenger-train consisted of an engine, tender, and at least two cars; the smoke-stack of the engine being fourteen feet above the rails. The bell on the locomotive was ringing continually while the engine passed over the eighty rods west of the crossing. In view of these facts, in connection with those hereafter stated, we are asked to determine the negligence or lack of negligence on appellee's part.

2. The electric car is propelled by a force which is a substitute for the horse or mule. The horse car was accepted as an additional vehicle, and they both use the streets on the same terms that they are used by other vehicles. *Magee* v. *Overshiner* (1898), 150 Ind. 127-130, 40 L. R. A. 370, 65 Am. St. 358; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. St. 264. The right of the street railway company to use the street and to cross the appellant's tracks

was in no respect different from the right of others to do so. Such right could only be exercised in conformity with the requirements which the railroad imposes; i. e., of exercising due care to avoid collision. Joyce, Electric Law, §410.

3. It is apparent that appellee did not look, or that he did not heed what he saw. With an unobstructed view of the approaching train he proceeded to climb the grade, and place his car in its path. When ten feet from the track his car was running one and one-half miles an hour. The car was then under control. The approaching train was within the range of appellee's view. The track was up grade, the train rumbling, the bell ringing, the motorman familiar with the schedule time of the train, and without reason to believe that it had passed the crossing. These facts can be reconciled with the collision that followed only upon the theory that the motorman was reckless or indifferent.

4. The duty of the traveler is to exercise ordinary care. What constitutes such care has been, to a large extent, defined by the decisions. It is not required of any person to use extraordinary care, notwithstanding expressions to that effect which may have been made. *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261-270.

Ordinary care consists in using precautions proportionate to the danger. The street car company is a common carrier of passengers. We know that large numbers of persons are transferred over the city streets by such instrumentalities. The cars are large and the propelling force of great power. The result of collision with rapidly moving railroad trains can not but be productive of injury and loss of life. The ability of a motorman in charge of a street car to regulate its speed and to stop it is, as a general rule, dependent upon his inclination. When appellee stopped his car twelve or fourteen feet from the track, he knew to what extent his view was obstructed. If it was obstructed to such an extent as to prevent his discovery of a train

approaching at sixteen miles an hour, and near enough to reach the crossing before he did so, it then became his duty, in the exercise of ordinary and reasonable care, to go in advance to a point where he could see whether it was safe to proceed. In some states and cities it is by statutes or ordinances made the duty of a motorman in all cases to go ahead of the car to the railroad track, and look for approaching trains before undertaking to cross. In the absence of such a statute, or ordinance, it is, as a matter of law, contributory negligence for him to omit such precautions, when the view is obstructed, and such conditions prevail as are shown in the case at bar, and upon the hypothesis that the view was obstructed as claimed by appellee.

Judgment reversed, and cause remanded, with instructions to sustain appellant's motion for judgment notwithstanding the general verdict.