## BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY *v.* CLAPP, ADMINISTRATOR.

### [No. 5,229.    Filed May 11, 1905.]

1. PLEADING.— *Complaint.— Railroads.— Carriers.— Putting Off Passenger at Dangerous Place.*—A complaint against a railroad company for negligence in putting off a passenger at a dangerous place is not open to the objection that it failed to show that such passenger was ignorant of such condition, where it further avers that such passenger did not know of such danger until his injury occurred.    p. 406.

2. RAILROADS.—*Servant Riding Free to His Work on Passenger-Train. —Fellow Servant.*—A railroad employe riding free to and from his work, on a passenger-train, is a fellow servant of those engaged in operating such train.    p. 406.

3. PLEADING.—*Complaint.—Railroads.—Passengers.—Employe.— Free Pass.*—A complaint alleging that a railroad company by contract with its servant carried such servant on its passenger-trains to and from his work free as a passenger thereon is sufficient to show the relation of passenger and carrier.    p. 407.

4. SAME.—*Complaint.—Employers' Liability Act.—Railroads.—Negligence.*—A complaint against a railroad company which alleges that by

reason of the negligence of the engineer and conductor an employe was put off at a dangerous place, without warning, and by reason thereof he was killed, states a cause of action under the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294, §1).    p. 408.

5. TRIAL.—*Interrogatories to Jury.*—*Railroads.*—*Master and Servant.* —*Contributory Negligence.*—Where the answers to interrogatories, in a suit against a railroad company for negligence, show: That such company carried the decedent, its servant, free, and not as a passenger, to the place of his work; that it stopped the train for him to alight; that it cautioned him against the danger of another train, then due and approaching from the opposite direction, and that regardless of such warning he attempted to cross the track of such approaching train, when he was instantly killed, such facts conclusively establish decedent's contributory negligence.    p. 408.

From Dearborn Circuit Court; *George E. Downey,* Judge.

Action by John W. Clapp, as administrator of the estate of Dean C. Clapp, deceased, against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Edward Barton, McMullen & McMullen* and *Jewett & Jewett,* for appellant.

*George H. Voigt* and *Roberts & Johnston,* for appellee.

COMSTOCK, C. J.—This action was commenced in the Clark Circuit Court by appellee to recover damages alleged to have been sustained on account of the death of Dean C. Clapp, February 23, 1901. The accident in which appellee's intestate lost his life occurred in Dearborn county, and upon application of appellant and consent of parties the venue was changed to Dearborn Circuit Court, where it was tried.

The complaint was in three paragraphs designated as the first, second and third paragraphs of amended complaint. The first paragraph alleged that deceased was in the service of appellant as a telegraph operator at a signal-station; that under his contract of employment appellant undertook to carry deceased each day, on its regular passenger-train, free

of charge, as a passenger, from the city of Aurora to his place of employment; that on the day of his death he was carried as a passenger from Aurora to the signal-station, located on the south side of a line of double tracks, which ran east and west; that the train on which the deceased traveled ran on the north one of the double tracks, and reached said signal-station after dark, during a snowstorm and twenty minutes behind time, and at a time when another train was due to pass in the opposite direction on the south one of the double tracks, which circumstances made it a dangerous place for the deceased to alight; that the appellant negligently put deceased off the train at said place, and then and there ran the other train against him, whereby he lost his life; that when he got off the train he did not know that it was behind time.

The second paragraph differed from the first only in this: That while in the first paragraph of the complaint it was charged that appellant negligently put deceased off the train, and then ran the other train against him, in the second paragraph it was alleged that the appellant put deceased off the train and then negligently ran the other train against him. In other words, the first paragraph charged negligence in putting deceased off the train at that point; the second paragraph charged negligence in running the other train against him. While it contained all the formal statements of the other two, with the exception of the statement that he was to be carried free as a passenger, the amended third paragraph of complaint was based upon subdivision four, section one, of the employers' liability act. Acts 1893, p. 294, §7083 Burns 1901. It charged the appellant with the negligence of Reagan, the engineer in charge of the locomotive, and Lloyd, the conductor in charge of the train, in this: That they negligently stopped the locomotive and train for the purpose of enabling the deceased to get off at the signal-station, and negligently failed to inform Clapp that the place was dangerous because the train was behind time. In this

paragraph it was also alleged that deceased did not know that the train on which he rode was behind time.

Motions to make each paragraph more definite and demurrers to each paragraph were overruled. To each paragraph appellant filed a general denial. A trial resulted in a verdict and judgment in favor of appellee for $1,500. Answers to interrogatories were returned with the general verdict.

1. The first paragraph is claimed to be bad (1) because it does not allege that the decedent did not know that the place where he left the train was dangerous; (2) because it shows that the injury was due to the fault of a fellow servant. The first objection is successfully met by the averment that "The deceased did not then and there know that said train that struck him was approaching."

2.. As to the second objection, the specific facts pleaded show that the deceased was in appellant's service, being carried on appellant's train to his working place free of charge. These averments show that he was a fellow servant with the trainmen. "It is a general rule in this State that employes, while being transported to and from their work on the cars of trains of their employers, are fellow servants of those engaged in the same general undertaking, and if injured, while being so carried, by the negligence of a fellow servant, the employer is not liable therefor." *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85; *Bowles* v. *Indiana R. Co.* (1901), 27 Ind. App. 672, 87 Am. St. 279, and cases cited; *Capper* v. *Louisville, etc., R. Co.* (1885), 103 Ind. 305, and cases cited; *Ohio, etc., R. Co.* v. *Tindall* (1859), 13 Ind. 366, 74 Am. Dec. 259, and cases cited; *Gormley* v. *Ohio, etc., R. Co.* (1880), 72 Ind. 31; *Ewald* v. *Chicago, etc., R. Co.* (1888), 70 Wis. 420, 36 N. W. 12, 591, 5 Am. St. 178; *Gilman* v. *Eastern R. Corp.* (1865), 10 Allen 233, 87 Am. Dec. 635; *Ryan* v. *Cumberland Valley R. Co.* (1854), 23 Pa. St. 384; *Vick* v. *New York, etc., R. Co.* (1884), 95 N. Y. 267, 47 Am. Rep. 36.

3. Counsel for appellee admit that an employe carried to and from his work on the train of his employer is not a passenger, yet that appellant company in the case at bar had the unquestioned right to clothe the decedent with the rights of a passenger, and assume the same responsibility toward him that the law required it to assume toward a passenger, and that the averments of this paragraph show such contract. This is the averment referred to: "That on and prior to the 23d day of February, 1901, said Dean C. Clapp was in the employ of the defendant as an operator at said signal-station, and under his contract of employment as such operator the defendant agreed and undertook to carry said Dean C. Clapp every day on its regular passenger-train, free of charge, as a passenger from said city of Aurora to said place of employment, and stop such train at said latter place, and there safely discharge said Dean C. Clapp from said train."

· In *Indianapolis, etc., Transit Co.* v. *Foreman, supra,* the appellee, who was engaged as a laborer upon the tracks of the appellant, and was injured while on the car of appellant which he entered to be transported to his home, a complaint averred that he "was simply a passenger thereon at the time of the accident." . The court held that the allegations that he was simply a passenger and that appellant owed him a duty and promised to carry him safely, are mere conclusions of the pleader, and can not control the specific facts alleged showing that he was a fellow servant of those in charge of the passenger-car. Appellant cites the foregoing case.

In the paragraph under consideration it is averred that the appellant agreed to and undertook to carry the decedent on its regular passenger-trains, free of charge, as a passenger, and safely discharge him from such train. These averments are of facts and not a conclusion of the pleader. They show a contract which the parties were competent to make. The questions presented by demurrers to the first and second paragraphs are the same. The demurrer to each was correctly overruled.

4.    The third paragraph is based upon subdivision four, section one, of the employers' liability act (Acts 1893, p, 294, §7083 Burns 1901), which section makes a corporation liable for personal injury suffered by an employe in its service where such injury is caused by the negligence of any person in the employ of such corporation who has charge of any signal, telegraph office, switch yard, shop, roundhouse, locomotive engine or train upon a railway, or where such injury was caused by the negligence of any person, co-employe or fellow servant engaged in the same common service in any of the several departments of the service of such corporation.    It is argued that this paragraph is bad because it does not show that the deceased, at the time of his injury, was exercising due care and diligence.    In this, counsel are in error.    In each paragraph of complaint it is alleged that the decedent was exercising due care and diligence.

Another objection, that it fails to show that the decedent was, at the time of his injury, in the line of his duty, is not well taken.

The third objection is that the complaint fails to negative knowledge on the part of the deceased of the danger, such denial of knowledge being required for the purpose of showing that the danger was not voluntarily assumed.    The statement of the complaint shows that this claim can not be allowed.    The demurrer was correctly overruled.

5.    We next come to the consideration of the action of the court in overruling appellant's motion for judgment on answers to interrogatories notwithstanding the general verdict.    These answers show, in substance, that decedent was killed on February 23, 1901, on appellant's railroad track, at a point called Hogan, in Dearborn county, Indiana. Hogan was not a passenger station on defendant's railway. It was merely a signal-station for the purpose of giving track signals to passing trains.    The only structure there was intended and used for the purpose of a telegraph office and signal-station only.    It was near the west end of the appel-

lant's double-track railroad. Said tracks run substantially east and west. The trains going west ran on the north track of said double tracks; those going east ran on the south track of said double tracks. There was between said north and south railroad tracks at Hogan a space of about eight feet. Deceased at the time of his death was twenty-three years old, and was in the service of the defendant as one of two telegraph operators at Hogan. R. T. Bacon was the day, and Dean C. Clapp the night operator. Clapp's hours of duty were between 7 o'clock p. m. of one day and 7 o'clock a. m. of the following day. He had been so employed for a period of about five months before he was killed. It was his duty during said hours to give train signals to appellant's trains which passed on either of said double tracks. It was necessary for the proper discharge of his duty that he should know the time when each of the appellant's trains was due to pass said Hogan. He was familiar with the time-card, and, during the time of his said employment, knew when said regular trains were due to pass Hogan. He boarded at the city of Aurora, about four miles east of Hogan. He was accustomed to ride on appellant's regular train No. 26 from Hogan to Aurora each morning, and on appellant's regular passenger-train No. 27 from Aurora to Hogan each evening. He was carried free on appellant's railroad trains between Hogan and Aurora for his own convenience. He was carried from Aurora to Hogan on one of appellant's trains the night he was killed. Said passenger-train was No. 27, from Cincinnati to North Vernon. In running from Aurora to Hogan it ran on the north track of defendant's double tracks. Said train No. 27 was the train on which Clapp was accustomed to ride from Aurora to Hogan each evening. On the night he was killed it stopped or slowed down at Hogan for the purpose of allowing Clapp to leave the train. In leaving said train he got off at Hogan on the south side and between the double tracks. W. S. Garey, defendant's brakeman on train No. 27, told Clapp not to get off on the south

side of the train between the double tracks.    The deceased, in answer to the warning of Garey, said there was no danger. Before that time Garey had warned Clapp it was dangerous to get off between the double tracks at Hogan.  After getting off the train, he started at once to cross the south railroad track on his way to the telegraph station, and while crossing said south track was struck and instantly killed by the locomotive of appellant's passenger-train No. 8, running east over said south track.  After leaving train No. 27, he had proceeded about six or eight feet when he was struck by train No. 8.  From the point where deceased left train No. 27 and started to cross the south railroad track, the view of said track was not obstructed for about 1,600 feet west. Just before Clapp was killed, the engineer on the locomotive drawing No. 8 signaled by whistle to know if the south track was clear east to Hogan.  The whistle was heard at Hogan, and the signal that the track was clear given by R. T. Bacon to said engineer of No. 8.  Bacon saw Clapp as he stepped on the south railroad track where he was killed, and called aloud to him to warn him of his danger.  Upon another occasion Clapp barely escaped being run over by a train while passing from train No. 27 over the south track.  Before the day on which he was killed he had been warned by R. T. Bacon of the danger of leaving train No. 27 between the double tracks and crossing over the south track, and had been advised to leave train No. 27 on the north side.  Bacon saw train No. 8 approaching from the west before Clapp was struck and killed.  The headlight on the locomotive was burning.  Train No. 8 was a regular passenger-train of the appellant.  If Clapp had stopped and listened for the approach of train No. 8 he could not have heard the approach of said train before he went on the south track. Train No. 27 was about sixteen minutes late when it reached Aurora, and when Clapp went on it at Aurora.  It was about eighteen minutes late when he stepped from the train to go across to the signal-station at Hogan.  Train No. 8

running east on the south track of appellant's double railway tracks was due to pass Hogan at the time deceased stepped upon the track when he was struck and killed. The deceased had been accustomed to go from Aurora to Hogan for five months. He knew the time when train No. 27 was due to leave Aurora. He knew the time when train No. 27 was due to reach Hogan. In answer to question No. 76, "Did Dean C. Clapp know train No. 27 was behind time when he went upon the same the evening he was killed?" the jury answered: "No evidence."

Counsel for appellee concede that there can be no recovery upon the first and second paragraphs of the complaint, because of the failure of the proof of the facts alleged to constitute decedent a passenger. They insist that the proof establishes the allegations of the third paragraph, which proceeds under the employers' liability act, and the negligence is that of the conductor who stopped the train and put the deceased off at a place made dangerous by reason of the fact that the train was behind time, without informing him of such fact. Under the act relied upon there can be no recovery for the injury or death of one whose own negligence proximately contributed thereto. From the facts specially found there can be no escape from the conclusion that the unfortunate accident resulted from decedent's own negligence.

The jury finds that there was no evidence whether deceased knew that train No. 27 was behind time when he went on the same at Aurora. Facts are found, however, in answer to other questions which clearly show that he did. It was his duty, inseparably connected with his occupation, to know the time of the trains passing at Hogan. It would be presumed that he was not remiss. He knew thoroughly the conditions existing at Hogan. The darkness of the night and the noise of the engine might be accepted as excuses for his not seeing or hearing the approaching train and the call to him of his associate, Bacon, but not for his

disregard of the warning of danger which he heard and answered just before the accident. Whether this warning came from the brakeman or conductor could make no difference, for it was an appeal to him to be cautious. The fact that he had before been warned of the danger of leaving the train, and had once narrowly escaped with his life, would indicate at least the want of ordinary prudence. Appellant carried deceased to the place of his work, stopped the train for him to alight, and cautioned him not to get off where he did. Upon the answers to interrogatories and upon the evidence the appellee ought not to recover.

There are numerous other alleged errors discussed. It is not necessary to consider them.

The answers to interrogatories show that the decedent was guilty of negligence contributing to his death, and are in irreconcilable conflict with the general verdict.

There is no reason to believe that there would be any material change in the evidence upon a second trial. The judgment is therefore reversed, with instructions to sustain appellant's motion for judgment on the interrogatories.