INDIANAPOLIS TRACTION & TERMINAL COMPANY
v. ROMANS, ADMINISTRATRIX.

[No. 5,880.   Filed January 17, 1907.   Rehearing denied March 19, 1907.   Transfer denied June 5, 1907.]

1. PLEADING.—*Complaint.*—*Conclusions.*—*Facts.*—*Street Railroads.* —*Passengers.*—An allegation that the plaintiff was allowed to ride on defendant street railroad company's car "for his own conven-

MAY TERM, 1907. 185

Indianapolis Traction, etc., Co. *v.* Romans—40 Ind. App. 184.

ience and not because it was necessary in the performance of any labor for the defendant" is one of fact, and shows the circumstances under which plaintiff was riding. p. 189.

2. WORDS AND PHRASES.—*"Passenger."*—*Street Railroads.*—The word "passenger" imports one who travels in a public conveyance by virtue of a contract supported by a consideration consisting of the payment of fare or that which is accepted as the equivalent thereof. p. 190.

3. PLEADING.—*Complaint.*—*Passengers.* — *Street Railroads.* — *Free Tickets.*—A complaint alleging that the defendant street railroad company furnished plaintiff's decedent a ticket good on any car; that he took passage on one of defendant's cars; that by reason of the negligence of defendant's employes he was killed, and that he was allowed to ride for his own convenience and not in the performance of any labor for defendant, states a cause of action, the specific allegations being insufficient to show that the decedent was a mere fellow servant, and not a passenger. p. 190.

4. TRIAL.—*Verdict.*—*Interrogatories.*—*Street Railroads.*—*Passenger or Fellow Servant.*—*Free Tickets.*—Answers to interrogatories to the jury showing that plaintiff's decedent was riding from his work to his home on defendant street railroad company's car, by virtue of an employe's free ticket; that such ticket was good on any car going in that direction; that he was not engaged in any service for defendant at the time; that he was riding in the car as other passengers; that no contract existed as to the use of such ticket; that he obtained and used similar tickets for other purposes than riding to and from home; that such tickets were furnished because of his employment as a servant, and that he was killed by the negligence of defendant's employes, are not in irreconcilable conflict with a general verdict for plaintiff on the theory that decedent was a passenger. p. 191.

5. SAME.—*General Verdict.*—*Answers.*—*Conflict.*—The general verdict controls, unless the answers to the interrogatories to the jury are in irreconcilable conflict therewith. p. 193.

6. STREET RAILROADS.—*Railroad Crossings.*—*Negligence.*—*Contributory.*—A street railroad company is guilty of negligence in running its car upon a railroad crossing, without first investigating whether a train is near, and without attempting to stop the car; and a passenger killed thereby is free from contributory negligence. pp. 193, 195.

7. SAME.—*Passengers.*—*Who Are.*—An employe of a street railroad company seated on the front seat of a passenger-car and using an ordinary transfer given with the ordinary car ticket is a passenger. p. 194.

8. DAMAGES.—*Excessive.*—*Street Railroads.*—A verdict for $5,000, in an action for death caused by negligence, is not excessive, where the evidence shows that decedent was in good health, had

good habits, was fifty-eight years old, earned $10.50 per week and left a widow, one minor son and five adult children. p. 194.

9.   DAMAGES.—*Measure of.*—*Death.*—In the case of the death of the husband and father, from negligence, the damages should include the loss, to the child, of the parent's care, as well as the pecuniary loss to those entitled to recover. p. 194.

10.   MUNICIPAL CORPORATIONS.—*Ordinances.*—*Stopping Street-Cars at Railroad Crossings.*—An ordinance compelling motormen to stop their cars before going upon a railroad crossing until the conductors go across the farthest track and signal to cross, is valid. p. 195.

11.   TRIAL.—*Instructions.*—*Peremptory.*—A peremptory instruction for defendant should be refused, where there is some evidence tending to support the material allegations of the complaint. p. 195.

12.   APPEAL.—*Briefs.*—*Evidence.*—Alleged errors in permitting certain questions to be answered will not be considered, where the briefs of appellant fail to show such answers. p. 195.

13.   EVIDENCE.—*Incompetent.*—*Estoppel.*—Where defendant street railroad company has questioned its witnesses concerning its customs and practice in issuing tickets to its employes, it can not complain of the admission of similar evidence on behalf of plaintiff. p. 196.

14.   STREET RAILROADS.—*Carriers.*—*Passengers.*—*Free Tickets.*—A servant of a street railroad company riding to his home after the close of his day's work, on a free ticket issued by such company for his convenience, is a passenger, and not a fellow servant of those in charge of the car. p. 196.

From Superior Court of Marion County (67,714) ; *Vinson Carter,* Judge.

Action by Turpie Romans, as administratrix of the estate of Samuel Romans, deceased, against the Indianapolis Traction & Terminal Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter* and *W. H. Latta,* for appellant.
*Henry N. Spaan* and *Louis B. Ewbank,* for appellee.

COMSTOCK, J.—The action was brought by Turpie Romans, as administratrix of Samuel Romans, deceased, to recover damages from the appellant for the death of the deceased, alleged to have been caused by the negligence and carelessness of the servants and employes of appellant. The complaint was in two paragraphs. In the first it is alleged

that appellant is a corporation engaged in the business of owning and operating a system of street railroads in the city of Indianapolis, and a common carrier for hire, and that one of its lines was on West Washington street, which runs east and west; that on July 25, 1904, plaintiff's decedent was a passenger on board one of appellant's cars going west on Washington street, and that said car was in the sole charge of a motorman and conductor, who were employes of appellant; that when said car approached Missouri street, on which were located the tracks of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, the car was so negligently managed by said motorman that it collided with a passing train on said railroad, and plaintiff's decedent was killed, without any fault or negligence on his part.

The second paragraph alleges the same facts as are shown in the first, except that in addition to these it alleges that on July 25, 1904, the plaintiff's decedent, Samuel L. Romans, was in the employ of the defendant, and he was going home from his place of work on the evening of said day, after his hours of labor were over; that before he started home he applied for and procured, under the rules of the defendant, from the person placed in charge of said matter by said defendant, a ticket which enabled him to ride on any passenger-car of said defendant that went in the direction of his home; that, under the rule of said defendant in force at and before said date, a ticket was given to said decedent on the evening of said date entitling him to ride on a passenger-car going west on said Washington street in the direction of his home, and he was so allowed to ride for his own convenience, and not because it was necessary in the performance of any labor for the defendant, the Indianapolis Traction & Terminal Company.

Defendant demurred to the second paragraph of the complaint, on the ground that the same did not state facts sufficient to constitute a cause of action, which demurrer was overruled. Defendant filed an answer in two paragraphs.

First, a general denial. In the second, it is alleged that plaintiff's decedent was an employe of defendant, whose duty it was, as such, to go out over the lines of the street railway of defendant in the relief car to help replace cars upon the track that became derailed, and repair cars which had been broken, and it was also his duty to clean cars; that, as a part of his employment, defendant undertook and agreed to carry plaintiff's said decedent, while he was so in its service, between his home and the place where he was so employed by defendant in going to and from his work, and under such arrangement defendant furnished decedent with tickets entitling him to such transportaion, and that decedent was, at the time he was so injured, going home from his work as defendant's employe, upon an employe's ticket issued to him as aforesaid, and without having bought or intending to pay any fare for such transportation.

Plaintiff replied in three paragraphs, the first alleging facts showing that on the day of his death decedent was in the employ of defendant, but at the time he was killed his day's work was done and he was riding upon a car for his own convenience, and was not engaged in any work of any kind for defendant while riding on said car; that it was also true that he was riding upon a ticket or pass given him by defendant, but he was not required to ride upon it, and it could be used by him upon any car operated on the line over which it was good. The ticket used by the decedent not only expedited the business of defendant, but was issued and given to decedent for his own convenience, and was so being used by him at the time of the injury. The second paragraph alleges the same facts as are alleged in the first paragraph of reply, and in addition adds the language on the face of the ticket, to wit:

"Indianapolis Traction & Terminal Company, issued by Department No. 1. Employes' ticket. Good for one ride over line punched only when presented by the person to whom it was issued, subject to the rules of the company"

MAY TERM, 1907. 189

Indianapolis Traction, etc., Co. v. Romans—40 Ind. App. 184.

and alleges that there was a consideration given for said ticket, in this: that, at the time of and during his employment by defendant, the issuing of said ticket was agreed upon by them as a part consideration for his labor, and under this agreement said tickets were from time to time issued; that they were issued for the purposes aforesaid to all the employes of the company. The third paragraph was a general denial. Upon the trial of the cause the jury returned a general verdict for $5,000 in favor of plaintiff, together with answers to fifty-one interrogatories submitted to them. The court overruled defendant's motion for judgment notwithstanding the general verdict and for a new trial, and rendered judgment upon the general verdict for plaintiff for said sum of $5,000.

The errors relied upon are the action of the court in overruling the demurrer of defendant to the second paragraph of the complaint, in overruling defendant's motion for a judgment in its favor upon the answers of the jury to interrogatories submitted to them, notwithstanding the general verdict, and in overruling defendant's motion for a new trial.

In support of appellant's first specification of error it is insisted that the allegation contained in the second paragraph, that "he was allowed to ride for his own con-

1. venience, and not because it was necessary in the performance of any labor for the defendant," and that "plaintiff's decedent was a passenger * * * on said car," etc., are mere conclusions of the pleader, and are not admitted by the demurrer, and cannot control the special facts alleged, which show that he was a fellow servant of the motorman and conductor in charge of the car. Said paragraph alleges that the decedent was riding home on a passenger-car in the evening, after his hours of labor were over. He was using a ticket he had procured from appellant's servant entitling him to ride on a passenger-car. It is not alleged that decedent obtained it without paying for

190    APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. v. Romans—40 Ind. App. 184.

it, except as this fact might possibly be inferred from the averment that it was "applied for and procured under the rules of the company," with the recital that "such a ticket as was given decedent * * * entitled him to ride," etc., and the further allegation that "he was so allowed to ride for his own convenience, and not because it was necessary in the performance of any labor for the defendant." The averment that he was so allowed to ride for his own convenience, and not because it was necessary in the performance of any labor for the appellant, may fairly be considered as the statement of a fact properly connected with the allegation of his employment by appellant and the circumstance under which he was riding on appellant's car. Whether he paid for his ticket does not appear, nor what were the rules of the company. The kind of employment of the decedent does not appear.

The word "passenger" has a well-defined meaning, to wit: "One who travels in some public conveyance by virtue of a contract, expressed or implied, with the carrier, as for the payment of fare or that which is accepted as an equivalent therefor." Anderson's Law Dict. In *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 102 Am. St. 185, cited by appellant, the appellee had, after the day's work was over, entered a work-car of the appellant, with divers other employes of the appellant, for the purpose of being carried to his residence. The court held that the allegations of the complaint that the appellee was simply a passenger on the work-car, and that the allegation that appellant owed him a duty and was bound to carry him safely, were mere conclusions of the pleader. In *Baltimore, etc., R. Co.* v. *Clapp* (1905), 35 Ind. App. 403, also cited by appellant, the court held the specific facts pleaded showed that the decedent was in appellant's service, being carried on appellant's train to his working place, free of charge, and that he was a fellow servant. In the case at bar the specific allegations are not

inconsistent with the allegations that decedent was a passenger. The demurrer was properly overruled.

The answers to interrogatories show that the decedent, at the time of his death, was in the employ of the appellant corporation, and had been in such employ for fourteen years. His duties were to go out over the lines of said company and assist in replacing cars upon the track in the event of derailment, to repair cars which got out of order on the road, and to keep cars clean for use in the business of the company in carrying passengers. On the day of the accident he was on his way directly from his work.to his home, riding upon a car by reason of a ticket given to him by the barn foreman, which entitled him to ride to his house. At that time, and prior thereto, it was the custom of the appellant to give all of its employes doing manual labor of any kind tickets entitling them to ride on its cars from the place of work to their homes, and the next morning from their homes to their place of work. The custom was beneficial to said company in carrying on its business and beneficial to the employes of said company. It was a part of the system by which the company carried on its business as a common carrier of the public. Said decedent did not pay and was not intending to pay anything other than said ticket issued as aforesaid. There was no evidence that it was a part of the contract of employment · between the appellant and decedent that he should be entitled to ride upon an employe's ticket from his work to his home in the evening and from his home to his work in the morning. Said tickets were used whenever said company sent its employes from one place to another upon its lines upon business of the company. They were not issued to persons who were not employes. They were issued for other reasons than the transaction of the business of the company. Said custom of issuing tickets as participated in by the decedent at the time of such accident, and for a long

time prior thereto, was not a part of the contract of employment by which said decedent was working for said company. At the time of his death the decedent had surrendered the first ticket to the conductor, and he had the return ticket on his person. He asked for and was given the employe's ticket upon which he was riding at the time of his death, solely by reason of the relation of employer and employe then existing between said company and himself. At the time of his death he was making a proper use of the privilege he had as an employe, and exercising his right. No contract was shown. The ticket on which he was riding was what was known as a "Union Station ticket," that is, one on which he could ride anywhere he pleased on any line running to the Union Station. He was not bound to use the ticket he procured on July 25, 1904, and it was not necessary for him to use said ticket as soon as he procured it; he could wait several hours before using it, if he wanted to. The ticket was not to be used by him upon any particular car. His day's work was done at the time he took passage on the car on which he was killed. He was going home to his supper, was not in any way doing work for the appellant, was simply riding on said car for his own convenience. He had no work to perform for the company after 5:30 o'clock p. m. July 25, 1904, until 7 o'clock the next morning, the time between those hours being his own. The appellant authorized the barn foreman to give out the employes' tickets to the men engaged in Department No. 1. The men employed in Department No. 1 could procure employes' tickets from said foreman for other purposes than riding home after their day's work was done. They were used by the employes of the appellant at other times than when going to and coming from work, and were honored by the various conductors of the various lines of the appellant about July 25, 1904, and before that time. The fact was known to the appellant before July 25, 1904, that its employes were riding upon employes' tickets to other places

MAY TERM, 1907. 193

Indianapolis Traction, etc., Co. *v.* Romans—40 Ind. App. 184.

than to and from their work. Deceased was employed in Department No. 1. He had, on numerous occasions, obtained from his barn foreman, employes' tickets to be used by him for other purposes than to procure passage to and from his work. It was a well-recognized part of appellant's system in carrying on its business, prior to July 25, 1904, to issue to its employes tickets known as employes' tickets for any purposes desired by such employes, other than going to and from work. The deceased was led by the appellant to believe that the ticket upon which he procured passage on July 25, 1904, was issued to him solely for his own convenience. At the time he was killed, he was riding upon appellant's cars in the same manner as any other passenger. He had nothing to do with the operation of the car he was on when he was killed. From 5:30 o'clock p. m. of July 25, 1904, until the next morning the appellant had no control over the actions of the deceased. There was not, at any time during the employment of decedent, any contract entered into by and between appellant and decedent as to his use of said employes' tickets.

The facts specially found are not in irreconcilable conflict with the general verdict, which finds that the 5. decedent was a passenger, and therefore, under numerous decisions, the general verdict must prevail.

On the motion for a new trial, appellant insists that the verdict of the jury is contrary to law and not sustained by sufficient evidence; that the undisputed evidence 6. of Mahoney and Condrey shows that the decedent was a fellow servant with the motorman and conductor, whose negligence is claimed to have caused the injury. The facts that the negligence of appellant resulted in the death of decedent, and that the decedent was free from contributory negligence, are, under the evidence, beyond question.

The decedent was on the first seat of a street-car, facing

toward the rear. The conductor was approaching, but had not yet reached him in collecting fares. He was using the ordinary transfer given on any car ticket. This evidence supports the verdict upon the question of the decedent's being a passenger. It is claimed that the damages are excessive. Decedent was fifty-eight years old, a hard-working man, of good habits, and in good health, earning $10.50 a week. He left a widow, a minor son, and five grown children. The true measure of damages is the pecuniary loss of those entitled to recover. The loss to the child of the father's care is one element of this measure of damages. "Where the relation of a party, whose death has been caused, to those for whose benefit the suit is being prosecuted, has been shown, and his obligation, disposition, and ability to earn wages or conduct business, and care for, support, advise, and protect those dependent upon him, the matter is then to be submitted to the judgment and sense of the jury." *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, and cases cited. The jury, under the statute, might have fixed the amount of the verdict at $10,000. The fact that this was not done would tend to show that the jury did not act from prejudice, partiality or corruption. We cannot say that there was an abuse of discretion in the assessment.

The court, in giving to the jury instruction five, said, in substance, that the violation of ordinance fifty of the city of Indianapolis was negligence *per se*. The giving of this instruction is one of the reasons for a new trial. The admitting of the ordinance in evidence was excepted to, and is made another reason for a new trial. Said ordinance was intended to regulate the manner of crossing steam railroads by street-cars in the city of Indianapolis, and provided that it should be unlawful for any conductor in charge of any street-car using the streets of said city, for the purpose of carrying passengers or freight, to permit such cars to cross or enter upon the track or tracks of any steam railroad in said city

until such conductor should have first fully crossed on foot to the opposite side of the farthest track of said steam railroad from his said car, and it should be unlawful for any motorman, gripman, or engineer, in charge of such car, to go upon the track or tracks of any such steam railroad until the conductor in charge of such car shall have first crossed on foot to the opposite side of the farthest track of said steam railroad from said car and shall, from said point, have signaled such motorman, gripman or engineer to proceed with his said car. It is claimed that said ordinance is by its terms unreasonable, unfair, arbitrary and oppressive, and, having been passed under the general grant of authority, is void, and that the admission of the evidence and the giving of the instructions were each erroneous.

It is not necessary to pass upon the question of the validity of the ordinance, because the uncontradicted evidence, without reference to the ordinance, shows appellant's negligence. *Pittsburgh, etc., R. Co.* v. *Browning* (1904), 34 Ind. App. 90. The car was run upon the track of a steam railroad, directly in front of an approaching train, without any effort to stop the car, and without any attempt by the conductor to ascertain whether the way was clear. While not basing the decision upon the validity of the ordinance we think it proper to say that we deem it valid.

The refusal of the court to instruct the jury in favor of defendant was not, as claimed by appellant, error, for the reason that there was evidence clearly tending to sustain the material allegations of the complaint.

The witness Bowne was permitted, over the objection of the defendant, to answer the following questions: "I will ask you if tickets were issued to you on other occasions, when you told them that you were not going to or from work, but for other purposes? Now, how are you in the habit of using those tickets?" The witness Stead

196     APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. v. Romans—40 Ind. App. 184.

was asked, over the objection of the defendant, the following: "Did you get any tickets from them [barn foremen] at a time you stated to them that you were not going home, but wanted them for some other purpose?" The following, over the objection of appellant, was put to the witness Cree: "What statement did Thornton ever make to you for issuing these tickets for pleasure trips, or for trips not connected with your going to and from home, at a time when you asked him for tickets?" The objection to each of these questions was that it was collateral to the issues in the case. Appellant's brief does not show what answers were given to these questions. We cannot say from such brief that these answers were prejudicial. It appears, however, that the questions objected to by appellant relate to the custom and practice of the appellant in issuing tickets to 13. its employes, about which the defendant had questioned its own witnesses, and, if the questions objected to had been improper, the defendant was not in a position to complain. *Blough* v. *Parry* (1896), 144 Ind. 463; *Pence* v. *Waugh* (1893), 135 Ind. 143; *Campbell* v. *Connor* (1896), 15 Ind. App. 23; Ewbank's Manual, §255.

The controlling questions in this case are whether the defendant, in riding home after his work was done, was a passenger or fellow servant, and whether the evidence 14. supports the verdict that he was a passenger.

Numerous cases decided on facts analogous to those of the case at bar would warrant the conclusion that he was a passenger. *Dickinson* v. *West End St. R. Co.* (1901), 177 Mass. 365, 59 N. E. 60, 83 Am. St. 284, 52 L. R. A. 326; *Peterson* v. *Seattle Traction Co.* (1900), 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586; *Chattanooga Rapid Trans. Co.* v. *Venable* (1900), 105 Tenn. 460, 58 S. W. 861, 51 L. R. A. 886; *Doyle* v. *Fitchburg R. Co.* (1894), 162 Mass. 66, 37 N. E. 770, 25 L. R. A. 157, 44 Am. St. 335; *Doyle* v. *Fitchburg R. Co.* (1896), 166 Mass. 492, 44 N. E. 611, 33 L. R. A. 844, 55 Am. St. 417; *Louisville, etc., R. Co.*

v. *Scott's Adm.* (1900), 108 Ky. 392, 56 S. W. 674, 50 L. R. A. 381; *State, ex rel.,* v. *Western Maryland R. Co.* (1884), 63 Md. 433; *Whitney* v. *New York, etc., R. Co.* (1900), 102 Fed. 850, 43 C. C. A. 19, 50 L. R. A. 615; *Williams* v. *Oregon, etc., R. Co.* (1898), 18 Utah 210, 54 Pac. 991, 72 Am. St. 777; *McDaniel* v. *Highland Ave., etc., R. Co.* (1890), 90 Ala. 64, 8 South. 41.

There are many cases in which employes are held to be fellow servants while traveling in various ways and by various methods of transportation as an incident of their employment, where they were at the time in the service of the defendant and subject to the control of a foreman. In *McDaniel* v. *Highland Ave., etc., R. Co., supra,* it is held that where an employe of his own volition rides on a passenger-car, he cannot assert the rights of an employe when they differ from those of a passenger. The case at bar is not one in which the employe was being transported in the immediate connection with his employment. Such cases are distinguishable from the one at bar. *Dickinson* v. *West End St. R. Co., supra; Doyle* v. *Fitchburg R. Co., supra; Peterson* v. *Seattle Traction Co., supra.* Decedent's time was his own. It was not part of his duty to defendant to take the car on which he was riding and go to his home. He might go where, and in any way, he pleased. He was not riding in the line of his duty in the course of his employment.

Judgment affirmed.