Mrs. Jessie Mae THOMAS, as Administratrix of the Estate of James Everette Thomas, Deceased, Plaintiff-Appellee,

v.

S. H. PAWLEY LUMBER COMPANY, Inc., Defendant-Appellant.

No. 13524.

United States Court of Appeals Seventh Circuit.

April 2, 1962.

Rehearing Denied July 13, 1962.

David E. Rosenfeld, Terre Haute, Ind., for appellant.

Robert G. Wolfe, Terre Haute, Ind., for defendant-appellant.

C. William Allen, Terre Haute, Ind., Harold H. Clokey, Jr., Atlanta, Ga., for appellee.

Before SCHNACKENBERG and KILEY, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Plaintiff's decedent, James Everette Thomas, died May 13, 1960, as a result of a collision between a tractor-trailer combination then being operated by him and a truck owned and operated by defendant. Plaintiff filed suit for damages for wrongful death. By its verdict, the jury found the issues for plaintiff and awarded her damages in the amount of $175,000.00. Defendant appeals from a judgment entered on that verdict.

On May 13, 1960, plaintiff's decedent was engaged in the operation of a tractor-trailer combination from Atlanta, Georgia, to Chicago, Illinois, over U. S. Highway 41. On the same day, defendant's employee, Godbey, driving a Chevrolet truck owned by defendant was engaged in towing a disabled Ford truck also

owned by defendant, from Burlington, Indiana, to defendant's principal place of business at Cayuga, Indiana.

Defendant's trucks were fastened together by a log chain, fourteen feet in length, connected from the left rear of the towing vehicle to the left front of the towed vehicle. The vehicle being towed was steered by defendant's employee, Sayre.

At about 9:30 p. m., defendant's vehicles, southbound on U. S. 41, and the northbound vehicle being then operated by decedent met on a bridge over a stream known as Coal Creek, near Attica, Indiana. While thus meeting upon that bridge, the towed vehicle and decedent's vehicle collided. After the collision, decedent's tractor-trailer continued its northerly progress, off the bridge and across the west, or southbound, lane of the highway where it then overturned off the travelled portion of the highway. The tractor-trailer was demolished. The decedent was thrown therefrom and was dead when located shortly after the collision.

The principal contentions advanced for reversal relate to instructions. At the close of the evidence, plaintiff tendered nineteen instructions and defendant tendered twenty-seven. The record discloses that on the evening prior to those tenders, the court submitted forty-six instructions to counsel for each party for inspection. The court refused all instructions tendered by the parties and gave the instructions prepared by the court.

Principally, defendant contends that its tendered instruction No. 14 should have been given and that certain of the given instructions were not supported by the evidence.

Defendant's tendered instruction No. 14 would have advised the jurors that their verdict must be for the defendant if the jury found that "defendant's truck" was at all times west of the center of the pavement, or if, from all the evidence, the jury should be unable to determine whether defendant's truck was, immediately prior to the collision, to the east of the center of the pavement.[1]

That contention must be rejected, inasmuch as the instruction, if given, would mandatorily have removed from the jury's consideration all questions except the question of who crossed the center line. Improper lane usage is *prima facie* negligence, only, under Indiana law, not negligence *per se*. E. g., Larkins v. Kohlmeyer, 229 Ind. 391, 98 N.E. 2d 896, 900; Hancock Truck Lines v. Butcher, 229 Ind. 36, 94 N.E.2d 537, 542; Lee v. Dickerson, Ind.App., 171 N.E.2d 698, 702–703.

In the Lee case, error was assigned upon the refusal of an instruction which, after quoting the statutory requirement that all vehicles be driven on the right half of the roadway,[2] would have told the jury that if it found that defendant had violated the statute "such conduct" "would constitute negligence." The court held the instruction properly refused because it failed to advise the jury that such a violation is *prima facie* negligence, only, which "may be rebutted by a showing of reasonable excuse or justification." 171 N.E.2d at 703.

In the Larkins case, the court said: "[Upon proof that the defendant had violated the statute requiring motorists to drive on the right side of the road] we think it would be proper to instruct the jury that if they find from a fair preponderance of the evidence that the

1. That tendered instruction is as follows: "I instruct you, members of the jury, that, if you find from a preponderance of the evidence, immediately before and at the time of the collision in question, Defendant's truck was at all times west of the center of the pavement, then, I instruct you, members of the Jury, your verdict must be for the Defendant. Or,

if, after a fair and candid consideration of all the evidence, you are unable to determine whether Defendant's truck was, immediately before and after the time of the collision in question, to the east of the center of the highway, then, and in that event, your verdict must be for the Defendant."

2. Burns' 1952 Repl., § 47–2010.

defendant violated the provisions of the statute, he was guilty of negligence, unless they further find from a fair preponderance of the evidence that compliance was impossible or noncompliance was excusable [because of circumstances beyond his control]." 98 N.E.2d at 900.

Again in Freeport Motor Cas. Co. v. Chafin, Ind.App., 170 N.E.2d 819, 822, the court said that evidence of improper lane usage, coupled with evidence that compliance with the statute was made impossible by forces beyond the control of the violator, presents a question of fact for the jury upon the issue of negligence.

██ We need not further belabor the point, since we are convinced that the evidence adduced was, at least, sufficient to present a fact question for the jury whether defendant's vehicle was or was not in its proper lane. The instruction was incomplete and, as posed, was an erroneous and misleading statement of the law. It was properly refused.

██ Moreover, the appendix filed by defendant contains a part, only, of the instructions given by the court. Without the whole of the court's charge before us, we must assume that the court's charge adequately stated to the jury the law with respect to lane usage.

██ Defendant next contends that there was not sufficient evidence to submit the case to the jury upon the specifications of negligence alleged in the complaint. Plaintiff's theory was that defendant was negligent in towing the Ford truck in the manner in which it was towed, and that the towed truck struck the west bannister of the bridge and caromed off the bannister into the east lane of the pavement and decedent's path of travel.

Actually defendant's contention rests largely upon the premise that its employees testified positively that the Ford truck was at all times west of the center line of the pavement. We find that premise faulty, both because the testimony of defendant's employees was contradictory and because their testimony is in part contradicted by evidence of physical facts and the testimony of other witnesses.

Thus, although Godbey, the driver of the towing vehicle, did testify that he had observed the towed vehicle enter the bridge in the west lane of the pavement and intimated by his testimony that the towed vehicle broke loose from his truck at the time of the impact of the collision, he later testified that he felt the towed vehicle break loose when decedent's vehicle was "on the east side of my vehicle in the north bound lane." Although Sayre, driver of the towed vehicle, testified that his truck had been west of the center line at all times, he also testified that he felt the rear end of his truck being pushed to the left side of the bridge "almost instantaneously" as decedent's cab "passed my cab."

Defendant's Ford truck involved in the collision was approximately 22½ feet in length overall. The point of impact upon the Ford was approximately at the rear wheels thereof.

Plaintiff's witness, Taylor, testified that Godbey had told him within a few minutes after the collision that the towed truck had hit the bridge and broken loose or had broken loose and hit the bridge.

The front end of the bed of the towing truck was solid wood extending to within eight or nine inches of the edge of the bed proper, except that a hole had been cut to correspond with the rear window of the cab. Sayre testified that he could not see the road directly in front of the attached vehicles, but that he could see all of the rear of the towing vehicle, the lights of approaching traffic through the hole in the front of the bed of the towing vehicle, a part of the road around the corners of the board and tall objects over the top of the cab of the towing vehicle.

Both oral testimony and photographic exhibits reveal gouge marks in the pavement extending northerly from near the center of the bridge in the east lane of pavement, and tire skid marks beginning at the north end of the bridge in the east lane of pavement and continuing across the pavement of the highway to the point

where decedent's vehicle finally came to rest.

Plaintiff's witness, Greiner, an insurance adjuster, examined the scene of the collision beginning shortly after midnight on the morning of May 14, 1960. He observed damage to the right front fender of the Ford truck at a point about 36 inches above the ground. He found the right front tire on the Ford truck scuffed and damaged on the sidewall and the right rear tire thereof blown out. Residue of red paint, matching in color the paint of defendant's Ford, and rubber marks were found along and upon the north end of the west bannister of the bridge. A mark extended along the top of the west bannister from a point about three feet north of the first supporting pilaster to the pilaster itself. The northeast corner had been knocked off that pilaster, and the top of the pilaster bore marks of damage and bits of red paint. The distance from the floor of the bridge to the top of that pilaster was 36 inches. Mr. Greiner testified that, in his opinion, the damage and marks observed by him were fresh because he found that beads of rubber came off the tire marks on the bannister when he rubbed his hands over the marks.

Photographic exhibits taken on May 14th reveal the areas of damage, debris, gouge marks and tire marks about which Mr. Greiner testified.

The above summary of the evidence is not intended to be either complete or detailed, but is designed only to demonstrate that the evidence was sufficient to present the case to the jury upon the specific allegations of negligence. Such instructions as are printed reveal that the court charged the jury that it was their province to determine, from all of the evidence what were the facts of the matter. That charge was justified by the evidence of record.

The most serious question, and, also, the question least forcefully advanced on this appeal, is defendant's contention that the verdict was excessive.

Defendant moved for a new trial in the court below, *inter alia*, upon the ground that the verdict of $175,000.00 was excessive. Its motion was denied.

In its brief in this court, defendant argues, largely upon mathematical formulae, that decedent's next of kin will reap benefits from this judgment far in excess of the pecuniary value to them of decedent's continued good health even if he had lived to a ripe old age. Although application of the supplied formulae leads to the conclusion that this verdict, like that involved in Bucher v. Krause, 7 Cir., 200 F.2d 576, 585, was "large, indeed bountiful", it does not follow of necessity, as defendant contends, that we must now hold that the verdict was excessive.

On the contrary, we feel that adherence to the teachings of the Bucher opinion compels the conclusion not only that we ought not disturb the judgment, but, also, that we may not disturb the judgment without arrogating to ourselves a power which does not exist.

In Bucher, Judge Lindley wrote for a unanimous court a well-reasoned survey of the applicable law to which the court may look with pride.[3] However, the striking feature of that survey is that no concrete legal principle is thereby devised which can guide disposition of this oft-times perplexing issue in every case. On the contrary, that survey led to the conclusion that no guiding principle can be established in this area other than the principles which exemplify the power of this court to review a judgment upon a contention that a verdict was excessive. In sum, in any case in which a jury is given the power to assess damages by its verdict, and the jury selected for trial of the case has acted, and after the trial judge, upon a motion for a new trial, has rejected the contention that the jury's verdict was excessive, our power, on review, is limited to the inquiry whether the trial judge abused his discretion in his holding that the jury remained within in the allowable limits of its discretion

3. 200 F.2d at 585–588.

in assessing the amount of damages. Bucher v. Krause, supra, at 587–588.[4]

The Indiana wrongful death statute, Burns' Ann.Stat. § 2–404, provides that damages may be awarded for the pecuniary loss suffered by a decedent's dependent next of kin. Determination of the amount of pecuniary loss in a particular case is the function of the jury, New York Central R. Co. v. Johnson, 234 Ind. 457, 127 N.E.2d 603, 606; Henschen v. New York Central R. Co., 223 Ind. 393, 60 N.E.2d 738, 740, and the jury may take into account the loss to children of their father's care. Indianapolis Traction & Terminal Co. v. Romans, 40 Ind.App. 184, 79 N.E. 1068, 1071. The amount allowable as damages is not limited by any statutory ceiling, and the assessment of the amount thereof is limited only by the requirement that there be adequate credible evidence to sustain the jury's determination.

Plaintiff's decedent was 37 years of age at the time of his death, and left him surviving his wife, aged 33, and four minor children ranging in age from 1 year to 14 years. He was an able-bodied person who was employed as an over the road truck driver by Terminal Transport Co., Inc. He received a salary in excess of $9,334.00 for the year 1959. He had earned approximately $3,300.00 from that employment between January 1, 1960, and the date of his death. He was industrious and devoted his available time and his income, in excess of personal expense, to the welfare and support of his family. Mrs. Thomas testified that she handled the family finances and that decedent turned all wages over to her except twenty to twenty-five dollars per week retained by decedent for personal and travel expenses. His life expectancy was in excess of 31 years.

It is certain upon the evidence of the record, that the verdict was an allowable judgment with respect to the pecuniary loss resulting to the dependent next of kin from decedent's death. The trial court so held when it denied the motion for a new trial, rejecting defendant's contention that the verdict was excessive. We need not speculate what we would have done had that motion been addressed to us. We cannot say upon the record before us that the trial judge abused the large discretion with which he was vested in so ruling. Our inquiry must end with that conclusion. Bucher v. Krause, supra.

We have examined the other contentions of defendant and conclude that each is without merit.

The judgment is affirmed.

---

4. See also, Dagnello v. Long Island R. R. Co., 2 Cir., 289 F.2d 797.

As Judge Learned Hand observed in Miller v. Maryland Cas. Co., 2 Cir., 40 F.2d 463, 465, "We must in effect decide whether it was within the bounds of tolerable conclusions [for the trial judge] to say that the jury's verdict was within the bounds of tolerable conclusion."

The Supreme Court suggested in Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683, that there is no abuse of discretion in a failure to set aside a verdict claimed to be excessive unless it must be said that the verdict is "monstrous".